(118 So. 271)

**YAUGER v. TAYLOR. (2 Div. 916.)**

Supreme Court of Alabama. May 24, 1928.

Rehearing Denied Oct. 25, 1928.

236

George Pegram, of Linden, for appellant.

Bruce K. Craig, of Selma, and A. W. Stewart, of Marion, for appellee.

BOULDIN, J. The settlement of uncertain or disputed boundaries by proceedings at law, or in equity, has long presented difficult questions to the bar as well as the courts of this state.

Cases involving conveyances by government subdivision have been most numerous.

The passing away of the marks of the original surveys by process of time, and clearing up the country, have contributed to uncertainty. Surveys made by course and distance only, as found in the field notes, sometimes relying on traditional starting points, often conflict and add confusion. Ancient boundaries, or traditional corners, set by later surveys, often become of major importance in ascertaining where the original lines were in fact apart from any question of adverse possession. Ford v. Bradford, 212 Ala. 515, 103 So. 549.

As early as McQueen v. Lampley, 74 Ala. 409, Judge Stone pointed out the difficulty of settling a disputed boundary line by ejectment where muniments of title call for government subdivision. If the plaintiff sues by the description in his deed, and defendant pleads not guilty, he admits possession of lands covered by plaintiff's deed and not his own. If he disclaims the possession of the lands sued for, he cuts himself off from proof of adverse possession, whether it arise by an agreed survey acquiesced in by both parties, by a line pointed out to him, when he purchased, and to which he has held without question for the statutory period, or by any other form of adverse possession recognized by law. On a disclaimer the plaintiff may elect to take judgment without cost. In such event there is no adjudication of the location of the true line, and if the sheriff be sent to put plaintiff in possession, he has no aid from the judgment of the court. Said Judge Stone:

"We submit if there should not be some change of the statute on this subject. Should not a defendant in a case like the present, have equal right with the plaintiff, who brings him into court, to so plead as to put the question of boundary in issue, and have the jury pass upon it?"

The Code Committee of 1907, by amendment of section 3843, provided that in connection with a disclaimer the defendant may suggest that the suit arises over a disputed boundary line and thus cause the true bound-

ary to be adjudicated and marked. Some difficulty under that statute was pointed out by Anderson, C. J., in Howard v. Brannan, 188 Ala. 532, 66 So. 433. A further amendment appears in the Code of 1923, § 7457. Is this not a legislative recognition upon judicial suggestion that the remedy at law was theretofore inadequate in such cases?

We turn now to the original jurisdiction in equity to settle uncertain and disputed boundary lines. In Ashurst v. McKenzie, 92 Ala. 484, 9 So. 262, it was said:

"The jurisdiction of chancery to establish disputed boundaries is ancient and well defined. It does not arise upon any mere dispute as to the location of the boundary between adjacent parcels of land, or even upon a mere dispute as to such location of a confused or obliterated line. There must in addition to all this be some special ground of equitable interposition. Such grounds, it is said, may be predicated of the fraud or neglect of duty of the defendant, whereby the confusion and obliteration has resulted; and where the line is marked upon the surface of the ground, and is plowed over and obliterated for the purposes of a fraudulent insistence that it is elsewhere than at its true location; or by a person having at the time possession of his own and the adjoining parcel, and thus being under a duty of maintaining and preserving the demarkation of the two tracts. 3 Pom. Eq. Jur. 1384–5; Wake v. Conyers, 1 Eden Ch. 227; Rous v. Baker, 4 Town P. C. 660; Speer v. Crowten, 2 Merio, 410–17; Norris' Appeal, 64 Pa. 275; Hill v. Proctor, 10 W. Va. 59; Wetherbee v. Dunne, 36 Cal. 249."

Speaking again of this ancient jurisdiction in Guice v. Barr, 130 Ala. 570, 30 So. 563, it was declared the jurisdiction will be exercised where the line has been obliterated or confused by act of the defendant in fraud of complainant's rights. Where respondent had sold the land to complainant, failed to point out the line, which had become obliterated, and interfered with a survey of the line by complainant, this was held such fraud as warranted equitable relief. Hays v. Bouchelle, 147 Ala. 212, 41 So. 518, 119 Am. St. Rep. 64.

In Turner v. De Priest, 205 Ala. 313, 87 So. 370, an agreement fixing the line followed by possession and acquiescence for 30 years, and the death of one of the parties, was held to present an estoppel in equity. The controlling factor in fixing the line was possession under the circumstances disclosed.

Statutory provision touching equity jurisdiction in such cases appeared as subdivision 5, section 3052, Code of 1907, reading:

"The powers and jurisdiction of courts of chancery extend— * * *

"5. To establish and define uncertain or disputed boundary lines."

The first case to come before this court under this statute, we believe, was Davis v. Grant, 173 Ala. 4, 55 So. 210. Without discussion the court considered and affirmed a decree on the express ground that a boundary line had been agreed upon and perfected by adverse possession.

In later cases, such as Billups v. Gilbert, 195 Ala. 518, 70 So. 145, Chappelear v. McWhorter, 204 Ala. 269, 85 So. 386, and Harley v. Chandler, 204 Ala. 207, 85 So. 546, it was recognized that a bill following the statute was sufficient to confer jurisdiction in the absence of demurrer.

■ The rule is well established that if a court has no jurisdiction of the subject-matter, its proceedings are void. The parties cannot by agreement confer jurisdiction in such case. An appeal from such decree will be dismissed. The above decisions cannot be reconciled with the view that a court of equity has no jurisdiction of the subject-matter of settling disputed boundaries; that its jurisdiction must rest alone on an independent equity.

■ These cases are in entire harmony with the rule that where equity has general jurisdiction over the subject-matter, a defect in the bill, in failing to aver such details as good pleading requires to invoke such jurisdiction, must be raised by demurrer.

In Goodman v. Carroll, 205 Ala. 305, 87 So. 368, on demurrer, it was held the statute of 1907 was merely declaratory of the common law, that a bill must still aver some special equity, and placed the ruling upon the ground that it would otherwise invade the right of trial by jury. This case was thereafter followed.

Thus matters stood until the Act of October 1, 1923, Acts 1923, p. 764. This statute, as last amended, came up for consideration in Jenkins v. Raulston, 214 Ala. 443, 108 So. 47. As appears from the opinion and more fully from the original record, which has been examined, that case involved six or more acres of lands known as "Woodlawn," lying between inclosed lands of adjoining proprietors. The bill was filed in two aspects; one invoking the equity jurisdiction at common law; the special equity relied upon being an estoppel by reason of an agreed boundary line acquiesced in for some 30 years. This court held the trial court in error in sustaining a demurrer to that aspect of the bill. This aspect of the bill, however, was amended, no ruling was made on demurrer thereto, and the trial court held the evidence did not sustain, the bill in this aspect. This finding was sustained in this court. The other aspect of the bill was framed under the statute. The bill disclosed that the title to a definite piece of land was involved, set forth the line claimed by complainant, and based claim thereto both on muniments of title and continued possession under claim of ownership. Demurrer challenged the bill on the ground that it involved title to lands; attacked the constitutionality of the statute as a denial of trial by jury. The trial court in his ruling on demurrer held the statute constitutional and overruled the demurrer. The defendant by

answer expressly set up adverse possession to the line claimed by him. Much testimony related to alleged adverse possession on both sides. The trial court held upon the evidence that neither party had made out a case of adverse possession to the line claimed by him, that the line must be determined from the muniments of title, and appointed a commission to locate it.

Touching this aspect of the case, this court said:

"Since the Act of 1923, p. 764, approved October 1, 1923, this subdivision 5 of section 3052, Code of 1907 (now section 6465, Code of 1923), reads: The circuit court in equity matters has jurisdiction: '5. To establish and define uncertain or disputed boundary lines whether the bill contains an independent equity or not.' These words, 'whether the bill contains an independent equity or not,' were added by this act. This bill was filed February 12, 1924, and the decree on the demurrer was rendered on May 1, 1924, after this amendment by the act was written in this section; and it was unnecessary for this bill to allege some facts showing an independent equity. Acts 1923, p. 764, § 1; section 6465, Code of 1923.

"But the respondents insist this act of 1923, amending section 3052 of the Code of 1907, is unconstitutional, that it violates section 11 of the Constitution of 1901, which declares that the right of trial by jury shall remain inviolate. This act does not contravene that section of the Constitution. The right to establish and define uncertain or disputed boundary lines belongs to a court of equity. This amendment to the statute does not enlarge the jurisdiction of the court of equity on the subject, but simply does not require an averment of facts in the bill showing an independent equity to render the bill of complaint free from objection by demurrer. Turner v. De Priest, 87 So. 370, 205 Ala. 313; Goodman v. Carroll, 87 So. 368, 205 Ala. 305, and authorities supra."

In view of the record before the court and assignments of error, it seems apparent this court sustained the statute as applied to a case involving disputed title to a definite tract of land claimed by both parties, and recognized the jurisdiction to try all issues necessary to establish the line between the parties, the manifest purpose of the statute. A former judgment in ejectment was held conclusive of the title to the disputed area; hence, there was no occasion to review the finding of the trial court on the issue of adverse possession.

This Jenkins Case was followed by Camp v. Dunnavent, 215 Ala. 78, 109 So. 362, saying:

"A court of equity has jurisdiction 'to establish and define uncertain or disputed boundary lines, whether the bill contains an independent equity or not.' Code, § 6465, subd. 5. The existence of uncertainty or dispute between adjoining proprietors touching their boundary line gives equity to the bill. The amended statute was intended to meet the decision in Goodman v. Carroll, 205 Ala. 305, 87 So. 368, holding the bill must show some other equity than mere un-

certainty or controversy as to the location of the line. Jenkins v. Raulston, 214 Ala. 443, 108 So. 47.

"In establishing the true line the court may consider all questions going to that issue, including muniments of title, adverse possession, estoppel, or agreement of parties. The statute aims to furnish a full remedy in equity as to all matters of disputed or uncertain boundary between adjoining lands, affording such incidental or supplemental relief as to do full equity in the premises."

■ The right of trial by jury protected by the Constitution does not include matters within the original jurisdiction of a court of equity. Baader v. State, 201 Ala. 76, 77 So. 370. Did a court of equity have jurisdiction of disputed boundary cases within the meaning of this rule?

■■ The rule is general and well recognized that when an equitable cause is presented, the court will, after granting the equitable relief, proceed to do complete equity, and to that end grant incidental relief which may be awarded at law. But the rule is likewise as firmly settled that if the equitable relief sought is denied, the court cannot retain jurisdiction and grant relief available at law. There must be equitable relief as a basis for supplemental relief.

Now in disputed boundary cases the sole relief under original chancery powers was to establish, settle, and mark the boundary line in dispute. The special equity in such cases related, not to an independent equitable cause of action calling for separate relief, but to some conduct of the respondent relating to the boundary line tending to work a fraud on complainant, or some matter of estoppel against respondent. No independent relief because of this equity was sought or granted. The aim of the suit and relief granted was and is to settle the lines. The special equity was merely incidental to this main purpose. The substantial matter of jurisdiction, not the incident, should determine the constitutional status of legislation.

■ The court having ancient jurisdiction of the subject-matter, with more adequate procedure to accomplish the end, the statute is designed to make such jurisdiction fully effective. It does not enlarge the power of the court of equity to deal with disputed boundaries, but brings all cases within that power.

The court of equity is not wanting in power to try titles to lands, so far as required in granting full equitable relief. As our cases above discussed fully disclose, this power has been freely exercised in boundary line cases under original chancery powers, whether the controversy involves the location of the true line by muniments of title alone, or the issue also involves claims of adverse possession. This is but an application of the principle that equity determines all matters incident to the exercise of its jurisdiction and the

granting of relief. The relief in these cases to be effective must establish and settle the line between the parties.

As held in Iowa cases, a construction of the statute which would determine only a part of the controversy and leave open to further litigation questions of adverse possession as affecting the boundary line would strip the statute of its usefulness, and make the court of equity an agency for promoting a multiplicity of suits. Williams v. Techantz, 88 Iowa, 126, 55 N. W. 202; Lawrence v. Weiss, 163 Iowa, 584, 145 N. W. 308.

That the Legislature intended this statute to have effect according to its plain language can hardly admit of controversy. There was no occasion to restore the ancient equity jurisdiction. It has never been taken away.

We think there is no sound constitutional reason for denying full effect to the statute. We adhere to the decisions in Jenkins v. Raulston and Camp v. Dunnavent, supra, as sound law.

In so far as Goodman v. Carroll, 205 Ala. 305, 87 So. 368, holds the Legislature without power to enact the present statute in so far as it involves title to a disputed area, that case is overruled.

██ The bill as amended was not wanting in equity, nor subject to demurrer for failure to aver a special equity; nor was the court of equity without authority to determine all questions, including the issue of adverse possession, essential to a final adjudication and settlement of the true boundary line.

The cause was heard upon testimony of witnesses examined in the presence of the trial court. The legal evidence supports the decree granting relief and the line established by commissioners and confirmed by the court.

Affirmed.

GARDNER, THOMAS, and BROWN, JJ., concur.

ANDERSON, C. J., and SAYRE and SOMERVILLE, JJ., concur in result.

SAYRE, J. (concurring specially). Appellee Taylor filed the bill in this cause to have the court determine the boundary line between coterminous lands owned by himself and appellant Yauger. The final decree determined the line in dispute by reference to the government survey and ordered the register, as commissioner, with the assistance of an engineer whom he might select, to lay off the line so determined on the ground, which was done. Yauger appeals.

The first proposition of the brief for appellant is that the bill is demurrable for lack of a specific offer on the part of complainant to do equity, and that the point was well taken in the circuit court. No specific offer to the effect contended for was necessary to the equity of the bill. Complainant's prayer, it hardly seems necessary to say, was that the court define and establish the disputed boundary line according to equity and the procedure peculiar to that court. As long as the proceeding remains one only to define and establish a disputed boundary, no other equity in favor of defendant is involved. Appellant, defendant, cites Clark v. Whitfield, 213 Ala. 441, 105 So. 200. In that case, a suit for partition, it was held that where an answer has been filed setting up an equity in defendant, complainant must, "in view of the answer," offer to do equity. But this is a different case. Appellant's answer does not set up an equitable ground of relief as against complainant. It alleges that the predecessors in title of complainant and defendant more than ten years before suit was brought agreed upon and established the line between their respective lands, different from the line set forth in complainant's bill, which line was marked by cuts or hacks upon trees, by stakes, by an old fence row, and by an old road, and, in effect, that defendant and his predecessors in title had ever since claimed, cultivated, and controlled the land on his side of the line thus established and defined. Aside from its denial of the line claimed by complainant, the essential meaning of this answer was that, whatever may have been the true location of the line between the parties if determined according to the government survey to which their muniments refer, a different line had been established, up to which, on his side, defendant had held adversely for more than ten years. By this answer defendant set up a title by adverse possession of the disputed area between the two lines (Pittman v. Pittman, 124 Ala. 306, 27 So. 242; Hess v. Rudder, 117 Ala. 525, 23 So. 136, 67 Am. St. Rep. 182; McLester Building Co. v. Upchurch, 180 Ala. 23, 60 So. 173); and thereupon defendant moved the court to transfer the cause to the law side of the docket and demanded a trial by jury. This motion and demand were by the court overruled and denied, therein acting, as defendant seems to infer, in pursuance of so much of the statute (section 6440 of the Code 1923) as prescribes that the court "shall determine any adverse claims in respect to any portion of the land involved which it may be necessary to determine for a complete settlement of the boundary lines."

If subdivision 5 of section 6465 of the Code 1923, conferring upon the court of chancery jurisdiction "to establish and define uncertain or disputed boundary lines, whether the bill contains an independent equity or not," and the above-quoted provision of section 6440 of the Code, intend that in cases of uncertain or disputed boundary lines, where no equity has been superinduced by the parties, as for example by the fraud or other misconduct of the defendant, equity shall have jurisdiction to determine title to lands without the intervention of a jury, though demanded, they clearly transcend the Constitution wherein

it is provided that the right of trial by jury shall remain inviolate. As was noted in Billups v. Gilbert, 195 Ala. 518, 70 So. 145, the constitutional question here involved was interestingly discussed and decided, in agreement with the view now expressed, in King v. Brigham, 23 Or. 262, 31 P. 601, 18 L. R. A. 361. What was there said, involving much of legal history and precedent, need not be repeated. A like opinion had previously, and before the concluding clause of section 6465 had been added (Acts 1923, p. 764), been expressed by this court without much discussion and in a manner indicating that discussion was unnecessary. Ashurst v. McKenzie, 92 Ala. 484, 489, 9 So. 262.

But appellant's answer in the court below may be accepted as a denial of the facts on which the equity of complainant's bill was rested, and the decree under review may be, and therefore must be, justified on the ground that the court ascertained, and intended to ascertain, the location of the line shown by the muniments of title, but not to render any decree concerning the legal title to the lands in dispute. For, while equity may in proper cases, that is, in cases where jurisdiction has been acquired upon original grounds of equity, proceed to the determination of the title to land, it must decline jurisdiction where the remedy at law is complete and adequate or where its jurisdiction is invoked as a substitute for the action of ejectment. Gulf Red Cedar Co. v. Crenshaw, 148 Ala. 343, 42 So. 564; Ashurst v. McKenzie, supra; Hays v. Bouchelle, 147 Ala. 212, 41 So. 518, 119 Am. St. Rep. 64.

According to our inherited principles of equity, the courts administering that jurisdiction "will not interpose to ascertain boundaries, unless, in addition to a naked confusion of the controverted boundaries, there is suggested some peculiar equity which has arisen from the conduct, situation, or relations of the parties" (4 Pom. Eq. Jur. [4th Ed.] § 1384), meaning some misconduct on the part of defendant, as, for example, fraud or a failure to preserve the local evidences of the boundary in case that duty for any reason rests upon him. Stuart's Heirs v. Coalter, 4 Rand. (Va.) 74, 15 Am. Dec. 726, editorial note on page 745. The statute (subdivision 5 of section 6465 of the Code 1923, and the sections embraced in chapter 265 of the Code) extends the jurisdiction to cases of uncertain and disputed boundaries without regard to independent or superinduced equities, thus reviving an ancient jurisdiction which the court of chancery had abandoned (15 Am. Dec. p. 745), and the power of the Legislature to do that cannot be questioned; it being understood, however, that the jurisdiction so conferred does not extend to the determination of legal titles in cases in which trial by jury is demandable as of right. Hence it is

that the only question of equitable cognizance presented by the record in this cause arose out of complainant's prayer, in effect, for a commission to locate the boundary between himself and defendant and the averment and proof of facts going to show the propriety of a decree in agreement with the prayer; but, it will be noted, in agreement with what has been said, that the decree cannot have the effect of an estoppel operating upon the legal title acquired or contended for as the result of an adverse possession. Shaw v. State, 125 Ala. 80, 84, 28 So. 390. The effort of defendant to show an adverse possession was dehors the proper issue in the cause and might well have been excluded in its entirety. Defendant's exceptions to sundry adverse rulings on questions of evidence, supposed to shed light upon the question of adverse possession, will not avail anything in the way of reversible error, for the court on appeal considers only the relevant, material, and competent testimony (Code 1923, § 6565), and renders such decree as may thereupon appear to be proper.

Our attention is now in consultation directed to the statement made in Camp v. Dunnavent, 215 Ala. 79, 109 So. 362, that the court, on a bill in equity to establish and define a disputed boundary line, may consider, among other things there mentioned, the question of adverse possession between the parties, meaning, of course, the question of title by adverse possession. That statement appears to have been made without reference to the authorities on the constitutional question involved. The writer, Chief Justice ANDERSON, and SOMERVILLE, J., are unwilling to follow that dictum which, in our opinion, is contrary to the reason of the matter and the numerous decisions cited above. Goodman v. Carroll, 205 Ala. 305, 87 So. 368. We concur in the result.

ANDERSON, C. J., and SOMERVILLE, J., concur in this opinion.