## PORTER et al. v. STATE.   (No. 7330.)

Court of Civil Appeals of Texas.   Austin.
Feb. 16, 1929.

J. B. Dandridge and R. J. Jones, both of Houston, for appellants.

Claude Pollard, Atty. Gen., C. W. Trueheart, Asst. Atty. Gen., G. B. Smedley, of Wichita Falls, and W. W. Caves, of Austin, for the State.

BAUGH, J. Appeal from a judgment in favor of the state recovering as vacant public domain certain lands in Harris county, Tex. The trial was to the court without a jury. The land in controversy is marked L. A. Gueringer location on the accompanying map:

Tex. 253, 231 S. W. 1074). The same surveys, the same boundary lines, and substantially the same evidence is here presented as was before the court in that case, and we refer to those opinions to be considered in connection with this case for purposes of brevity and explanation.

The field notes of the Benjamin Barrow survey's north line call for it to run with the south line of the Bloodgood league west of Cedar Bayou. Likewise the field notes of the Ashbel Smith survey, made in 1874, call to begin in the north line of the Barrow survey at the southwest corner of the Bloodgood league; thence with its west line 1,600 varas to the southeast corner of the Ellis league; thence along the south line of the Ellis league to a corner; thence south 1,600 varas to the north line of the Barrow; thence east closing on that line. The Richie survey, also made in 1874, calls for a beginning point on the north line of the Barrow

The state took a nonsuit as to certain defendants, who claimed small portions of said land, and their lands were excluded from the recovery; but we are not concerned with that here. Nor shall we discuss the questions raised by appellants at any great length for the reason that we think this case is largely determined by that of Wilson v. Giraud, decided by the Galveston Court of Civil Appeals (234 S. W. 110), and by the Supreme Court upon certification from that court (111

at the southwest corner of the Smith, and lies immediately west of the Smith. It is obvious, we think, that the surveyor who made the Smith and Richie surveys, as did Patrick who made the Barrow, and as called for in the original field notes, assumed that the north line of the Barrow corresponded with the south line of the Bloodgood west of Cedar Bayou. However, the Supreme Court in Wilson v. Giraud, supra, held that the evidence in that case, which the parties

hereto agree was substantially the same in this case, was admissible to show that the true north line of the Barrow as surveyed in 1835 and as established on the ground was and is in fact located 702 varas south of the south line of the Bloodgood, and the trial court has so found. The northwest corner of the Bloodgood, the southeast corner of the Ellis, and the south line of the Ellis are established and identified. The distance between the south line of the Ellis and the north line of the Barrow as located by the trial court is 2,302 varas, instead of 1,600 varas as called for in the original field notes of the Smith and Richie surveys. In 1886, or 12 years after he had made the survey of the Smith and Richie tracts, the same surveyor, manifestly concluding that he had made an error in locating the north line of the Barrow, made another survey of these lands wherein he obviously placed the north line of the Barrow in the location fixed by the trial court in this case—that is, approximately 700 varas south of the south line of the Bloodgood— and by so doing created a vacancy approximately 700 varas wide along the south line of the Ellis and between it and the Smith and Richie surveys. A vacant narrow strip was also made by this survey in 1886, along the west line of the Bloodgood between that survey and the Smith survey. When that asserted vacancy was filed upon, a lawsuit ensued with the owners of the Smith and Richie lands on the ground of a conflict. In that case (Wilson v. Giraud, supra), the Supreme Court expressly joined the Smith and Richie surveys to the Ellis on the north and the Bloodgood on the east, conclusively eliminating any question of a vacancy on those two sides. In that case the north line of the Barrow was not fixed by the court, but it is obvious that both the Supreme Court and the Court of Civil Appeals assumed that it was located 702 varas south of the south line of the Bloodgood. In that case (111 Tex. 264, 231 S. W. 1078) the Supreme Court say:

"Apart from course and distance, the field notes identify the land patented to Smith by reference to the north line of the B. Barrow survey, the west line of the Wm. Bloodgood league, the S. E. corner of the George Ellis league, and the south line of the George Ellis league. To construe the call for the north line of the B. Barrow survey as a call for that line at a distance of 702 varas south of the south line of the William Bloodgood league is to make the call repugnant to every call in the Smith patent, except the calls for course and distance. By construing the call for the north line of the B. Barrow survey as a call for that line as it was at the time designated on the official maps, and as the Barrow field notes pointed to its location by the call to run with the south line of the Bloodgood league, is to prevent any repugnancy between the calls of the Smith patent.

The latter construction is reasonable, and since it harmonizes all the terms of the patent it must be adopted under the general rule for the interpretation of written instruments.

"If, however, it were impossible to reasonably so interpret the patent as to prevent the disregard of any of the calls, we would still have no hesitancy in rejecting the call for the Barrow north line. In determining boundaries, when all the calls cannot be followed, as few should be disregarded as possible. Hill v. Smith, 6 Tex. Civ. App. 312, 25 S. W. 1083. Therefore, if we had to disregard either the call for the Barrow north line or the calls for the Bloodgood west line, the Ellis southeast corner, and the Ellis south line, the call for the Barrow north line would be disregarded.

"The call for the Barrow north line, if repugnant to the other calls, would be the call to be ignored, under the rule which rejects such matters of description, in an ambiguous grant, as clearly appear to have been inserted by mistake, and which gives controlling effect to such matters as seem certain and 'most consistent with the intention to be derived from the entire description.' Hubert v. Bartlett, 9 Tex. 104; Finberg v. Gilbert, 104 Tex. 547, 141 S. W. 82; Lilly v. Blum, 70 Tex. 712, 6 S. W. 279; Harrell v. Morris [Tex. Sup.] 5 S. W. 626, 627."

As above stated, the trial court definitely located the north line of the Barrow 702 varas south of the south line of the Bloodgood. The evidence is clearly sufficient to sustain its location there. In the light of the Wilson Case, supra, conclusively joining the Smith and Richie Surveys to the Bloodgood and the Ellis, we think the only reasonable interpretation to be given to the patents issued to Smith and Richie is that the surveyor erroneously and by conjecture called for those surveys to begin on the north line of the Barrow, when in fact they began 702 varas north of that line and at the southwest corner of the Bloodgood, as found by the trial court. It is not at all probable, in the light of subsequent surveys made by him, and of the undisputed facts, that any such excess as 702 varas, in a line called to run only 1,600 varas, was made by the original surveyor in a level country. Under such circumstances, it was necessary, we think, for the trial court to ignore some call in the Smith and Richie field notes, and in the light of the holding in the Wilson Case, the only one he could ignore was the call for the north line of the Barrow as being the south line of these two surveys. In doing so the vacancy here involved is thus created.

■ We have not considered appellants' propositions in their order by reference. Most of them are correct propositions of law, but not applicable here. What we have said disposes of them in general except as to that complaining of the introduction in evidence

194

of certified copies of the judgment and pleadings in the case of Wilson v. Giraud, on the ground that that case was between entirely different parties from those to this suit and involved different lands. The general rule is that in such cases the judgment record of another case is not admissible. 22 C. J. 796. Though different parties and different lands were involved in that case, the same original surveys, boundary lines, and acts of the same surveyors, which determine the result of this suit, were involved. And the court's determination of those matters, "even though it is presented by different parties and concerns different properties," becomes binding and conclusive in subsequent litigation involving them, not as res adjudicata, but under the doctrine of stare decisis. Benavides v. Garcia (Tex. Civ. App.) 283 S. W. 611. The trial was to the court without a jury, and in the absence of a showing to the contrary, not made here, it is presumed that the trial court considered such evidence only for the purposes for which it was competent and legally admissible. Finding no error, the judgment of the trial court is affirmed.

Affirmed.