179 So.2d 287

**C. E. BRYAN et al.**

**v.**

**W. T. SMITH LUMBER CO., Inc.**

**4 Div. 160.**

Supreme Court of Alabama.

Jan. 7, 1965.

Rehearing Denied Oct. 21, 1965.

Prestwood & Prestwood, Andalusia, for appellants.

**540**

Thornton & McGowin, Mobile; Poole & Poole, Greenville, and Ben H. Lightfoot, Luverne, for appellee.

COLEMAN, Justice.

From an adverse decree, complainants in suit to determine and establish a disputed boundary appeal.

Complainants are two brothers. Respondent, Earl Bryan, is their brother. By bill of complaint filed March 21, 1960, complainants aver that they own an undivided one-third interest in E ½ of NW ¼ of Section 22, T 7 N, R 16 E, in Crenshaw County; that respondent Earl Bryan, owns the other two-thirds interest; that respondent, W. T. Smith Lumber Company, a corporation, sometimes herein referred to as Smith, owns the W ½ of NW ¼ of said section; and that the dividing line between the E ½ and W ½ of said quarter section is uncertain and disputed. The prayer is that the court enter a decree establishing the true boundary.

Decree pro confesso was entered against Earl Bryan.

By amended answer, filed February 22, 1962, Smith averred lack of knowledge of ownership of E ½ of NW ¼ of said section and demanded proof. As to ownership of W ½ of NW ¼, Smith denied the averments of the bill and averred that Smith now owns that part of W ½ of NW ¼ that lies west of Patsaliga River; that Smith did own that part of W ½ of NW ¼ east of Patsaliga River prior to October, 1960, when it was conveyed to Earl Bryan and his wife; that Earl Bryan was respondent in Case No. 2594 in the Circuit Court of Crenshaw County, in which case the disputed line was established by survey approved by said circuit court; that, on the line in suit, Smith owns only land adjoining that part of the line that lies north of Patsaliga River, that is, land adjoining only the north fifty feet of the line; that, by decree rendered "February 24, 1959," the circuit court approved an agreement ordering Smith to convey to Earl Bryan and wife forty-eight acres east of Patsaliga River in W ½ of NW ¼ of said section; that September 29, 1959, the circuit court entered an order confirming a survey made of the line in suit; that in October, 1960, in obedience to the decree, Smith conveyed to Earl Bryan and wife all W ½ of NW ¼ east of the river; that the line in suit is not uncertain and disputed but was established by the circuit court; that the line established by that court is binding on Earl Bryan under the doctrine of res judicata and on complainants under stare decisis. Smith prays that the court, in the

suit at bar, confirm the line established by the circuit court.

Smith introduced in evidence the file in Case No. 2594. In that case, Smith, as complainant, filed bill of complaint against Earl Bryan and wife to establish the true boundary between Smith's land and Earl Bryan's land. In its bill, Smith alleged that it owned the W ½ and that Earl Bryan and wife owned the E ½ of NW ¼ of Section 22, T 7 N, R 16 E.

Thus it appears that the location of the line between W ½ and E ½ of NW ¼ of Section 22 was at issue in the prior suit and is the same line which complainants seek to have the court establish in the instant suit.

It is readily apparent, however, that the parties in the two suits are not identical. The complainants in the instant suit were not parties in the prior suit, and it does not appear that the instant complainants stand in privity with any party to the prior suit.

The prior suit terminated in an agreement entered into by Smith and Earl Bryan and his wife. The circuit court, by decree of February 25, 1959, confirmed the agreement and by amendment to the decree, made March 20, 1959, the circuit court retained jurisdiction for making orders to enforce the agreement.

By its terms, Smith and Earl Bryan agreed that Patsaliga River is to be the dividing line in the W ½ of W ½ of Section 22; the land west of the river to be owned by Smith and the land east of the river to be owned by Earl Bryan and wife; this to be accomplished by appropriate conveyances.

Patsaliga River appears to meander on a course, roughly from north east to south west, diagonally across section lines.

With respect to the line, or part of the line, involved in the instant case the parties agreed as follows:

"6. The west line of the Northeast Quarter of Northwest Quarter of Section 22, Township 7 North, Range 16 East will be run south to the river from the existing corner, said corner being witnessed by twenty-four inch water oak and designated on the map of Carlos Botts now in evidence in this proceeding as Exhibit four."

The agreement also concerned other lands of the parties, mutual conveyances, and adjustment to compensate for differences in value of timber conveyed.

It appears that some difficulty was experienced in carrying out the agreement. On August 5, 1959, Smith filed its petition complaining that Earl Bryan and wife would not perform their part of the agreement, and alleging, among other things, that Earl Bryan and wife "are now claiming that they do not own the entire interest in the E ½ of NW ¼ of Section 22 . . . . and that they cannot comply with the land exchange called for in the agreement . . .."

On September 1, 1959, Earl Bryan and wife replied to Smith's petition, saying:

"5. That in answer to paragraph seven the respondents admit they are not the sole owners of the E ½ of NW ¼ of section 22, township 7 north, range 16 east, but only own an undivided four-sixths interest in said land and had the complainant made inquiry of the respondents interest in said land it would have been informed of respondents interest in said land."

There appear in the transcript as exhibits several deeds purportedly executed by Smith to Earl Bryan and wife. Apparently these deeds were executed in October, 1960, in an effort to carry out the agreement contained in the decree of February 25, 1959.

All this is significant to show that, in August, 1959, Smith, according to its own petition, had notice that Earl Bryan did not own the entire fee in E ½ of NW ¼ of Section 22; and that Smith, with such notice, proceeded to carry out the agreement by executing deeds fourteen months later

**542**

in October, 1960. The record shows that process had been served on Smith in the instant case seven months earlier on March 23, 1960. We do not hold, however, that any such notice to Smith was necessary to support the result which we reach on this appeal.

The foregoing will probably suffice to show the pertinent elements of the decree in the prior suit which Smith sought to interpose as binding against complainants in the instant case.

In the instant case, the court decreed ". . . that the decree rendered by the Circuit Court of Crenshaw County correctly defines the land line between the coterminous owners, a decree is hereby rendered sustaining the line as established by the Circuit Court as the line between the coterminous owners in this suit."

Complainants assign rendition of the decree as error. There are six assignments of error. Appellants argue them together. Appellee Smith says that at least one assignment is bad, and invokes the rule that where several assignments are argued together, and one is without merit, the others will not be considered.

■ The instant writer, as well as others, has been guilty of stating the rule as relied on by appellee Smith. Bertolla v. Kaiser, 267 Ala. 435, 440, 103 So.2d 736. The rule, that we consider no assignments when several are argued together and one is without merit, applies only when they are not kindred or related. Southern Electric Generating Company v. Lance, 269 Ala. 25, 33, 110 So.2d 627. Where several assignments are governed by the same legal principles and argument, it is not objectionable to argue them in bulk in the brief. Socier v. Woodard, 264 Ala. 514, 518, 88 So.2d 783.

■ All six assignments here are related and are governed by the same legal principles and argument. They assert only one error, i. e., that the court erred in rendering the decree. We do not commend the assignments as examples of good pleading but they

do state, however imperfectly, that the court erred in rendering the decree, and arguing them together does not preclude consideration of one assignment, even if others should be without merit.

■ Appellee singles out assignment 6 as being without merit. It recites:

"6. The Court erred in rendering its decree which in effect declares that these Appellants are not entitled to their day in Court."

Appellee Smith says ". . . . this does not constitute an assignment of error."

In Robinson v. Murphy, 69 Ala. 543, 545, the assignment was: "'the court below erred in the final decree rendered Oct. 8th, 1881.'" This court said that the assignment is very general, yet it conforms to the long practice in this court, and that, when the decree is assailed as erroneous in the whole, an assignment in the general terms of this assignment must be accepted as conforming to the rules of practice. See Birmingham Electric Co. v. Alabama Public Service Commission, 254 Ala. 140, 156, 47 So.2d 455, Paragraph [9].

Assignment 6 in the case at bar is imperfect, but is due to be considered in spite of its imperfection, because it fairly asserts that the court erred in rendering the decree, which, if erroneous at all, is erroneous in the whole.

Appellants argue that the circuit court decree is not conclusive against them, because they were not parties or privies to the suit in the circuit court, and that the court in the instant case erred in rendering a decree which declares that complainants are concluded by the circuit court's decree.

■■ Broadly stated, to sustain a plea of res judicata, the parties must be the same, the subject matter the same, the point must be directly in question, and the judgment must be rendered on that point. Ivey v. Wiggins, 271 Ala. 610, 612, 613, 126 So.2d 469. Counsel for Smith appear to agree that this is the correct rule. As already

stated, complainants were not parties to the prior suit and, for lack of identity of parties, the decree in that suit is not conclusive against complainants unless some exception to the rule requires a contrary result.

In a suit to settle a disputed boundary, this court held a mortgagee a necessary party. See Rollan v. Posey, 271 Ala. 640, 126 So.2d 464, and reasons there considered. See Pope v. Melone, 2 A. K. Marsh. 239, 9 Ky. 239. We think tenants in common are necessary parties in such a suit.

Smith argues, first, that equity has jurisdiction in disputed boundary cases only when there is a dispute between adverse parties to the suit, and that, because no dispute is here shown between Smith and complainants, the court had no jurisdiction. We think that a dispute between Smith and complainants is shown by Smith's answer, or plea, to at least the north fifty feet of the line. Whether the dispute be actually as to a greater distance is not clear from what is before us. Complainants are not required to prove that they are entitled to all the relief sought in order to be able to obtain some substantial relief sought which is proven. Elliott v. Lenoir, 263 Ala. 73, 75, 81 So.2d 274. If complainants do not satisfactorily show that their contention is correct as to the true line, the cause is not due to be dismissed, nor does it necessarily result in finding according to the contentions of respondent; but the court will proceed to find the true line, whether it be as either party contends. Both may be wrong in respect to their contentions. Crew v. W. T. Smith Lumber Co., 268 Ala. 628, 634, 635, 109 So.2d 721. We hold that a dispute is shown between Smith and complainants as to part of the line at least.

Smith argues, second, that because final decrees are not subject to collateral attack, and because the instant suit is a collateral attack, by complainants or Earl Bryan, on the prior decree of the circuit court, the decree appealed from should be affirmed.

In Miller v. Thompson, 209 Ala. 469, 471, 96 So. 481, in a suit to quiet title, this court quoted approvingly to effect that any proceeding provided by law for the purpose of avoiding or correcting a judgment is a direct attack, which will be successful upon showing error; while an attempt to do the same thing in any other proceeding is a collateral attack, which will be successful only upon showing a want of power.

Whether the instant suit be a collateral attack on the decree of the circuit court we do not decide. Even if, however, this suit be a collateral attack on the circuit court's decree, that is no bar to the success of attack because here it is shown that the circuit court had no power to adjudicate and conclude complainants' rights because the circuit court did not acquire jurisdiction of complainants.

Smith argues, third, that judicially established boundaries should be preserved by stare decisis. Smith seeks to apply the principle that a judgment by a court of last resort in a prior case as to location of boundaries, although involving different lands and different parties, is conclusive in later suits when the same surveys, the same boundary lines, and substantially the same evidence is presented. The prior judgment has been held binding and conclusive in subsequent litigation involving those surveys, boundary lines, and acts of the same surveyors, not as res judicata, but under the doctrine of stare decisis. Porter v. State, 15 S.W.2d 191, (Tex.Civ.App.1929). See Bibb v. Bibb, 79 Ala. 437; Tallapoosa County v. Elmore County, 230 Ala. 440, 161 So. 500.

While respect is accorded to the decisions of all courts whose judges are learned in the law, and what they determine is entitled to such weight as the ability of the judges composing those courts, and the care evidenced by the particular opinions under consideration, show they deserve, yet it is settled that stare decisis, especially as respects rules of property, has no application to decisions other than those of courts of last resort. Brolasky's Estate, 302 Pa. 439,

446, 153 A. 739. See: 14 Am.Jur. 290, Courts, § 74; 21 C.J.S. 398 Courts § 216.

The circuit court is not a court of last resort in this state, and for that reason, if for no other, the doctrine of stare decisis does not make the circuit court decree conclusive in the instant case.

Smith argues, fourth, that it has not been shown that the line fixed by the circuit court decree is erroneous. It is not argued and, for that reason, we do not rule on the question, but we are inclined to inquire whether the circuit court file was admissible in evidence against complainants. As to them, the file was a record of things done among persons other than complainants. If the file be excluded from consideration there is no evidence of any established line at all.

We have examined the several maps in the transcript and do not understand any of them to show the location of the line between W ½ and E ½ of NW ¼ of Section 22. If we are mistaken and the maps do show the line, it is certainly not clear, and, if the line be shown, it is a line established by an agreement to which complainants were not parties, and was established by agreement and not as the result of any survey, as we understand the transcript. Both parties may be wrong in respect to their contentions. Crew v. W. T. Smith Lumber Co., supra.

Because complainants were not parties to the prior suit, we are of opinion that the learned court in the instant case erred in holding the prior decree binding on complainants.

Reversed and remanded.

LIVINGSTON, C. J., and LAWSON and GOODWYN, JJ., concur.

### ON REHEARING

COLEMAN, Justice.

The brief of appellee on rehearing discloses a bitterness toward Earl Bryan which does not assist this court in deciding a difficult case. Light, not heat, is what the court needs.

Appellee argues that by reversing the decree we give Earl Bryan a third day in court on the same controversy. To set that idea at rest, we say here that we are of opinion that Earl Bryan is bound by the decree in the prior suit. So far as Earl Bryan and Smith are concerned, the line was established by the decree in Case No. 2594 in the circuit court. In the case at bar, the line will be established as between appellants and Smith. If it should result that the line finally fixed in the instant case does not coincide with the line fixed in Case No. 2594, it seems that the parties would be entitled to the land between the two lines as tenants in common according to their respective interests, but that question is not before us and may not arise.

In response to appellee's earnestness we have again examined the transcript in the light of appellee's criticism of the opinion. Appellee's brief concludes as follows:

### "CONCLUSION

"Since the Opinion of the Court in this case is factually in error in assuming:

"1. That Appellants were precluded from showing anything in this case because of the circuit court case;

"2. That Smith's pleadings established the jurisdictional requirements of a disputed boundary line;

"3. That only the circuit court file showed the line fixed by Judge Thagard;

"4. That the line is not clearly shown in the Transcript; and

"5. That the line approved by Judge Thagard was fixed only by agreement; "And since it is in error in assuming as a matter of law that boundary line cases depend solely on title rather than rightful possession; this Rehearing

should be granted and the Decree of Judge Kettler should be affirmed."

As to No. 1, that we erred in assuming that appellants were precluded from showing anything in this case, appellee says that the trial judge "did not blindly accept Judge Thagard's line and he did not close any doors to C. E. and R. C. Bryan. They had their day in Court. They just had a bad day, and they failed to show Judge Kettler where Judge Thagard was in error."

We did not say that the trial court refused to allow appellants to present evidence. What we said was: "Appellants argue that the circuit court decree is not conclusive against them, because they were not parties or privies to the suit in the circuit court, and that the court in the instant case erred in rendering a decree which declares that complainants are concluded by the circuit court's decree."

We may not fully comprehend appellee's argument. We do not wish to indulge in idle play on words or an exercise in semantics. The trial court's decree, complained of on this appeal, recites that "a decree is hereby rendered sustaining the line as established by the Circuit Court as the line between the coterminous owners in this suit."

If we understand the meaning of the quoted language, the decree just quoted from sustains the circuit court boundary line and makes that line, or the decree establishing it, conclusive against appellants. As we undertook to show on original deliverance, we are of opinion that appellants are not bound by the circuit court decree because they were not parties or privies to that suit. We do not think appellants have the burden of showing to the instant trial court, or to this court on appeal, that the circuit court decree is in error, and this view we hold because we do not think appellants are bound by the circuit court decree.

We will say this, that we are not persuaded that the line running "south to the river from the existing corner, said corner being witnessed by twenty-four inch water oak and designated on the map of Carlos Botts now in evidence in this proceeding as Exhibit Four," is necessarily the true line dividing the east half from the west half of northwest quarter of Section 22. The last quotation is from the circuit court decree

Appellee says said Exhibit Four, referred to in the circuit court decree, is not in the transcript before us but was before the trial court, and, therefore, we ought to assume that the omitted evidence sustains the decree appealed from. We note that Exhibit Four was an exhibit in Case No. 2594 in the circuit court and not in the trial court in the instant case. The register's certificate in the record before us recites that "the foregoing pages numbered One through 100, both inclusive, contain a full and complete transcript of a certain cause . . ." wherein appellants are complainants, etc. We think, on this certificate, we should regard the transcript as complete.

As to the reason we are not persuaded that the line established in the circuit court is necessarily the correct line we note the following statement from appellee's brief:

"After trying this case a day and a half, as recited in the Decree of the Court, (Tr. 67) the trial judge 'settled' the case by having the parties agree that the Patsaliga divided the east from the west half of the NW¼ of Section 22. Admittedly this 'agreement' was untrue, for the river was not such a dividing line. However, the Court then had the parties *make* the river *their* dividing line, by cross conveyances.

"The 'agreement' fixed the line between the east and west half of the NW ¼ of Section 22 and it was to run from an '*existing corner*' witnessed by a twenty-four inch water oak. (Tr. 68) This water oak is shown on Complainant's Exhibit 2, in this case, which was Botts' survey of March 5, 1959 (Tr. 16) made *after* the 'agreed' Decree of February 25, 1959 was entered.

"With this map, observe the map by Botts dated March 20, 1959 .(Tr. 76) These two maps demonstrate the difficulty in this case. The 'Henry Merrill Corner' is not in accord with the government survey. Nor is the 'Pickett Line' west from it. The point between the West and East ½ of NW ¼, Section 22 was located by Pickett by the 'off-set' shown on Tr. 76 and testified about by Surveyor Reeves and Earl Bryan. But if Pickett's line is the North line of Section 22, this midpoint between the West and East ½ of the NW ¼ must be on it. But, as is apparent, it can't be. Botts did the best he could with what he had. He was compelled to start at the 'Henry Merrill Corner'. He had to run to the 'existing corner' marked by the water oak. This made a straight line shown on pages 16 and 76 in the Transcript, but it could not follow the 'Pickett Line'. This was one of the things, which upset Earl Bryan."

Perhaps unnecessarily, we set out here Complainant's Exhibit 2, which is Botts' survey of March 5, 1959:

W. E. BRYAN & WIFE EUNIE BRYAN

conveyed from

W. E. BRYAN & WIFE EUNIE BRYAN

to

W. T. SMITH LBR. CO.

Scale: 1" = 5 chains    Date: March 5, 1959

BOTTS & RAY
CIVIL ENGINEERS
TROY ALABAMA

W. T. SMITH LBR. CO.

MERRILL CORNER

HENRY
conc. post
this survey

Pine stob by Powell
NE. cor. Sec. 22,
T7N, R16E.

DIXON

conc. post
this survey

S.E. cor. NE¼ of NE¼.
Sec. 22, T7N, R16E.
survey by Pickett

14    15    23    22

20° 31.4'
S 16° E
11° 06'
SOUTH

Pine stob
N.W. cor. NE¼ Sec. 22, T7N, R16E.
Survey by Pickett

37° 55.6'

S 85° 47' W

S 39° 08.6'

48 ac. ±

46° 27.5'

S 85° 47' W

W. E. BRYAN

(this survey)

24" Water Oak
3 old hacks a cross
Facing S.W.
S 86° 37' W  11° 86.1'

S 32° 17' W
2° 1.5'

S 23° 17' W
3° 62.4'

S 27° 17' W
4° 29.3'

S 44° 47' W
2° 53.2'

Meson water line

ATSALIGA RIVER

R. & E. R. LINE

conc. post
from which

SE 20° 6" Sweetgum
SE 15° 10" Water Oak
NE 30° 5" Water Oak
North 22.5' leaning 18" Birch

S 39° 27' W
1° 23.3'

STATE OF ALABAMA
CRENSHAW COUNTY

I, Carlos F. Botts, a Registered Engineer-surveyor
of Troy, Alabama, hereby certify the above map to
be an accurate record of a survey made by me
of the property described on the attached
sheet.

Carlos F. Botts
Reg. No. 1493

Now we understand that by order of September 29, 1959, Tr. 77, the circuit court disapproved said Exhibit 2, but our understanding is that appellee concedes that Exhibit 2 correctly shows the "existing corner" marked by the 24-inch water oak. As we read the map, the Merrill Corner, which may not be correct but was apparently accepted as the northeast corner of Section 22, is located 39.086 chains plus 11.961 chains, a total of not more than 51.047 chains, from the 24-inch water oak. If the north boundary of Section 22 is the length of 80 chains or 79.87 chains, as we understand the field notes, then the dividing line between east and west halves of Northwest quarter ought to lie 60 chains, or at least 59.90 chains, west of the northeast corner of the section. But, the distance shown on Exhibit 2 is only 51.047 chains, which is almost nine chains or 594 feet short. Thus, we are not persuaded that the line established by the circuit court is necessarily correct. It may be that we do not understand the map correctly, but, if we misunderstand, that fact further persuades us that the circuit court line is not necessarily the true line. Appellee admits in brief that the line agreed on as the river is not the true line. We are not persuaded that the same condition does not exist as to the line running south from the 24-inch water oak. That line also was fixed by an agreement to which appellants were not parties.

As to appellee's second criticism, that we erred in assuming "That Smith's pleadings established the jurisdictional requirements of a disputed boundary line," we should observe that we are not here concerned with a ruling as to the sufficiency of pleadings. We do not think appellee questions the sufficiency of the bill of complaint. As we understand appellee's argument, appellee contends that there is a failure to prove that the line between the east and west halves of northwest quarter of Section 22 is in dispute. Our statement, that a dispute as to the north fifty feet is shown by Smith's answer or plea, is misleading and we will undertake to correct it.

Smith's answer recites:

"6. That on the line in suit, W. T. Smith Lumber Company owns only land adjoining that part thereof that lies north of Patsaliga River; that is, that of the half mile length of the line in suit, W. T. Smith Lumber Company owns land adjoining only about the north 50 feet thereof."

What we should have said is that Smith's answer shows that Smith and appellants are coterminous owners to at least the north fifty feet.

Smith argues, however, that the evidence fails to show a dispute as to the location of the north fifty feet of the line. Smith says, "But Complainants never testified in this case." Such is the case, but we know of no rule that requires the landowner, in a boundary dispute, to take the witness stand and testify that the location of the line is disputed.

Appellee says " . . . . there is much testimony in this case about Earl Bryan disputing the line established by Judge Thagard," and

"But nowhere does Earl Bryan testify that

"(1) the line in question is uncertain, or
"(2) that it is disputed by C. E. and and R. C. Bryan

"*A fortiori* he failed to testify that there was a dispute on this line between complainants and respondents, as alleged in the Bill of Complaint."

Earl Bryan was called as a witness by appellants. He testified:

"Q. Now, getting back to the northwest quarter of Section 22, according to your personal knowledge, not what someone else says, but your personal knowledge, is

this line dividing the east half and the west half, in any dispute whatsoever?

"A. The one that comes down here?

"Q. Yes, sir.

"A. That's the one that the dispute is on.

"Q. That's the one this lawsuit is about, isn't it?

"A. That's right.";

and further, respecting the same line as we understand it:

"Q. Now, with reference to what caused, one of the things that put this line in dispute here, the one that we are litigating about, talking about now, right there, according to the W. T. Smith Lumber Company and the survey, the line that they are claiming, does it go over into the estate's property?

"A. Yes, sir.

"Q. Do you know how much it goes over?

"A. 10 and a half chains.

"Q. 10 and a half chains? You know that of your own personal knowledge?

"A. Yes, sir."

The estate referred to is the estate of appellants' father. Appellants claim as heirs of their father. We think this testimony shows a dispute between Smith and appellants as to location of the line.

In paragraph 5 of its answer, appellee avers that " . . . . the line in suit was litigated and finally established by a survey made under the direction and supervision of and specifically approved by the said Court," referring to Case No. 2594 in the circuit court. Thus appellee itself says the line was litigated in and established by the suit in the circuit court. If the line was ever established, it was established in that suit, but we are of opinion that the establishment in the circuit court in Case No. 2594 is not binding on appellants. We disagree with appellee and are of opinion that the existence of a dispute as to location of the line is sufficiently shown.

Appellee's third criticism is that we erred in assuming that only the circuit court file showed the line fixed by Judge Thagard. Appellee takes us to task for questioning the admissibility of the file in Case No. 2594. It should be sufficient answer to this criticism to repeat " . . . . we do not rule on the question . . . . "

Appellee argues that there is evidence other than in the circuit court file to show the line fixed by Judge Thagard. Conceding arguendo that there is other evidence to show the line, we are still of opinion that the line so fixed by the circuit court is not binding on appellants.

As to the fourth contention that we erred in assuming that the line was not clearly shown in the transcript, whether the line fixed by the circuit court be clearly shown or not, it remains a line fixed by an agreement to which appellants were not parties.

The fifth criticism is that we erred in assuming that the line approved by Judge Thagard was fixed only by agreement. Appellee says:

"But this Court, and Appellants, say that C. E. and R. C. Bryan are not bound by that Decree, since they were not parties to the suit. This is, of course, true. But, the use by Judge Kettler of Judge Thagard's Decree is not *necessarily* wrong. It could have been right. Certainly, it was consistent with the remainder of the Decree, for Judge Thagard fixed the lines by fixed landmarks, as Earl Bryan asked in his pleadings in the circuit court case. Is the fixing of a line at an 'existing corner' presumed to be

erroneous? We would have thought the exact opposite."

We have already undertaken to show that we are not persuaded that the "existing corner" marked by the 24-inch water oak is correctly located at the northwest corner of northeast quarter of northwest quarter of Section 22. Merely to say that it is an existing corner does not persuade us that the corner is correctly located. We do not understand that any presumption of correctness attends a decree fixed by agreement in a lawsuit to which appellants were not parties.

The sixth unnumbered criticism is that we erred in assuming that boundary line cases depend solely on title rather than rightful possession. We do not think we made that assumption. We do not understand that the evidence shows or that the trial court considered the possession, or lack of it, by either party. We do not find proof of actual occupancy by anyone. In that situation, it would seem that the location of the boundary would depend on title. In the absence of possession and monuments, what basis, other than title, exists on which to determine the location of the boundary? This court has said:

" * * * In Baldwin v. Harrelson et al., 225 Ala. 386, 143 So. 558, 559, it is declared as the established rule of our cases dealing with the establishment of disputed boundary lines between coterminous landowners that because the dispute thereof is affected by adverse possession and in fact involves the title to a strip of land in dispute between the undisputed holdings of coterminous landowners 'is none the less a boundary controversy and within the statutory powers of the chancery court.' * * *." Wood v.

Foster, 229 Ala. 430, 431, 157 So. 863, 864.

We do not think anything we have said conflicts with recognized rules as to what evidence is admissible in cases of disputed boundaries. In this connection, see Pounders v. Nix, 222 Ala. 27, 29, 130 So. 537.

Appellee asks what will be tried on remandment of this case. We think the court should determine the boundary according to accepted practices and procedure. This court has said:

"The purpose of sections 2, 3 and 4, Title 47, and section 129, subdivision 5, of Title 13, Code, is to establish uncertain or disputed boundaries. Complainant, therefore, ordinarily is entitled to a decree if the court finds a disputed boundary, rather than to deny all relief as was done here. Jenkins v. Raulston, 214 Ala. 443, 108 So. 47; Baldwin v. Harrelson, 225 Ala. 386, 143 So. 558; Copeland v. Warren, 214 Ala. 150, 153, 107 So. 94; Camp v. Dunnavent, 215 Ala. 78, 109 So. 362; Yauger v. Taylor, 218 Ala. 235, 118 So. 271; Smith v. Cook, 220 Ala. 338, 124 So. 898; Clarke v. Earnest, 224 Ala. 165, 139 So. 223." Drewry v. Cowart, 250 Ala. 406, 407, 34 So.2d 687, 688.

§§ 4 and 5 et seq., of Title 47, Code 1940, seem to provide authority for the court to order a survey to fix a disputed boundary between coterminous owners.

We are not persuaded that we should affirm the decree appealed from.

Opinion extended.

Application overruled.

LIVINGSTON, C. J., and LAWSON and GOODWYN, JJ., concur.