255 P.2d 183

GROSS et ux. v. MacCORNACK et ux.
MacCORNACK et ux. v. GROSS et ux.

No. 5307.

Supreme Court of Arizona.

March 23, 1953.

Charles P. Elmer, of Kingman, Shute & Elsing, of Phoenix, for appellants.

Carl D. Hammond, of Kingman, Clark & Clark, of Phoenix, for appellees.

UDALL, Justice.

The primary question before us is which of the parties to this appeal are lawfully entitled to the right to the use of the waters of Willow Spring, a small seep or spring in the Cerbat Range, 3½ miles northwest of Kingman, Arizona. The lower court determined the issues in favor of the appellees, John F. Gross and his wife, Bertha L. Gross. The appellants E. A. MacCornack and his wife, Harriet MacCornack, have appealed. This review is of the record of two suits that were consolidated for trial in the lower court.

### Cause No. 3652

In cause No. 3652, filed in June, 1940, the plaintiff, John F. Gross (appellee herein) sought injunctive relief against the defendants Al Smith and Spring Valley Livestock Company, a corporation (whose rights were subsequently acquired by the appellants who were substituted as parties defendant), to restrain and enjoin them from interfering with the flow of the waters of Willow Spring through a pipe line originating at the spring and terminating on land owned by the appellees. After hearing had a temporary restraining order was issued on June 18, 1940, preserving the status existing prior to the occurrence of

the acts complained of. With the temporary restraining order in full force and effect the case remained dormant over seven years.

## Cause No. 4331

The appellants, E. A. MacCornack et ux., as plaintiffs, in November, 1947 filed suit No. 4331 against the appellees, seeking to quiet their title to the land upon which Willow Spring is located. The appellees as defendants answered the complaint and filed therewith a cross-complaint by which they sought to establish their right to the use of the waters of Willow Spring and asked that ownership of the pipe line and an easement for the right of way therefor, over appellants' lands, be declared vested in them.

As the issues were closely related, by stipulation of counsel these two suits were consolidated for trial. In November of 1948, trial was had, the court sitting without a jury.

The facts leading up to this litigation, stated in a light most favorable to a sustaining of the judgment, are somewhat unique. We shall first set forth the titles to the properties in question.

## East Half of Section 12

In the year 1917 James Curtin made homestead entry on the east half of Section 12, T. 21 N., R. 18 W. He established residence, built a home and made other extensive improvements, including a large water tank and troughs, on land which he erroneously believed was embraced within the boundaries of his government homestead when in truth all improvements except some fencing were located on the west half of said Section 12. His final proof was submitted and a patent from the United States of America was issued to him while he was still unaware of the true N-S mid-section line dividing Section 12. James Curtin conveyed this land to one J. T. Murphy on July 15, 1927, and by mesne conveyances the appellants acquired title July 22, 1947 from the Monaghan & Murphy Bank, of Needles, California, with full knowledge of the restraining order then in effect. This deed, after describing the land conveyed, recites: " * * * Together with all springs, water rights, pipe lines and appurtenances thereunto pertaining and located on the above described real property."

## West Half of Section 12

James Curtin, on September 24, 1920, made an additional stock-raising homestead entry for the west half of Section 12. After his death in the fall of 1928, his widow Josephine H. Curtin received a patent therefor dated February 20, 1930. She later married Jos. T. Fitzgerald and the appellees obtained the property on August 8, 1941 from Mr. and Mrs. Fitzgerald by warranty deed. This deed, in addition to describing the land being conveyed, contained these words,— " * * *

together with all water, springs, and water rights thereon **or** appertaining thereto * * *."

### Section Nine and Willow Spring

Willow Spring is located upon the NW¼ of Section 9. Originally this section came to the Atlantic & Pacific Railroad Company as a part of a Congressional land grant. Title later passed to the Santa Fe Pacific Railroad Company, its successor in interest. Appellants and their predecessors in interest for many years held this realty under a grazing lease. On June 12, 1946 appellant purchased Section 9 from the railroad company and cause No. 4331, supra, was then brought to quiet title to this section in appellants.

In August, 1917, James Curtin posted a notice of location and claim to the right to the use of the waters of Willow Spring and had it recorded in the office of the county recorder of Mohave county. Curtin improved and developed the spring by collecting the water to a common point, by constructing converging small cuts and tunnels. Some similar development of the spring had been made prior to Curtin's entry. The water collected—a flow of approximately 8 gallons per minute—was conveyed by a one-inch pipe line 3½ miles in length (financed by the Monaghan & Murphy Bank who held a chattel mortgage thereon) across Sections 9, 8, and 7 of T. 21 N., R. 17 W., and the east half of Section 12 in the adjoining township,

to his home and improvements on the west half of the latter section.

It is clearly established that from the time the pipe line was laid to the date of the trial (30 years intervening), with the exception of 41 days in the year 1940 when Al Smith, appellants' predecessor in interest, cut the pipe line and interrupted the flow which gave rise to cause No. 3652, this water was continuously used at the Curtin home ranch on the west half of Section 12. The water was used for agricultural, domestic, and stock-raising purposes.

In our opinion the acquisition by appellants of the title in fee to Section 9 in no wise strengthened their claimed right to the ownership of the spring and the use of its waters on their east half of Section 12.

The lower court made findings of fact and the following conclusions of law:

"1. That plaintiff * * * Gross is entitled to a judgment * * * in cause No. 3652, against defendants * * * MacCornack * * *, restraining them * * * from interfering with the use of or the flow of the water through the pipe line from Willow Spring, * * *.

"2. That said * * * Gross, defendant and cross-complainant in * * * cause No. 4331, is entitled to a judgment * * * against. * * *

plaintiffs and cross-defendants * * * MacCornack * * * granting to said cross-complainant a perpetual easement in and to the water of Willow Spring and a perpetual easement and right of way for the pipe line from said Willow Spring * * * to the West Half (W.½) of Section 12, * * *, together with the right to .repair, maintain, and operate the said pipe line and convey the water from said Willow Spring therein and adjudging * * * that said water * * * is appurtenant to the West Half (W.½) of said Section 12, subject only to the right of said plaintiffs to a reversionary interest therein in the event of an abandonment or forfeiture of said right of said defendant for non-user.

"3. That said plaintiffs and cross-defendants in cause No. 4331 are entitled to a judgment * * * quieting their title to said Section 9, Township 21 North, Range 17 West, as to the defendants herein, except as to the rights of the said defendant and cross-complainant * * * Gross to use the water and maintain the pipe line from said Willow Spring * * * as herein provided."

The assignments of error are as follows:

### "No. I

"Assuming that the waters involved in this action could be acquired by adverse possession, the Court erred in its finding of fact that appellees were entitled to the exclusive use of the water; for the undisputed evidence, supported by a chain of title, establishes that if the waters were held adversely, they were so held by the predecessors of appellants and not by appellees or their predecessors.

### "No. II

"The Court erred in its conclusion of law that the waters in question were appurtenant to the West Half of Section 12.

### "No. III

"The Court erred in its finding of fact that the waters in question were taken openly, notoriously and adversely to the owners of Section 9. The undisputed evidence proves that the waters were not used exclusively; and proves that they were not taken openly and notoriously.

### "No. IV

"The lower Court adjudged that appellee was entitled to all the waters of Willow Springs up to the full carrying capacity of the existing diversion and transportation facilities. It was error for the Court to so decree in the absence of evidence as to the amount of water which appellee could and would put.to beneficial use."

■ This court in the case of Howard v. Perrin, 8 Ariz., 347, 76 P. 460, held that such water is a component part of the earth and the property of the owner of the overlying soil. This principle was reaffirmed by the majority in the case of Bristor v. Cheatham, 75 Ariz. 227, 255 P.2d 173. Therefore, if the judgment is to be sustained it must be upon the theory, in reality adopted by the trial court, of establishing a prescriptive right by adverse use.

■ As to assignment number three the record is replete with evidence, sustaining the lower court's findings of fact and judgment, that James Curtin did openly and notoriously go upon Section 9 and adversely to the then owners of this section capture the water of Willow Spring and by a pipe line convey it to the west half of Section 12, and since then has been openly, notoriously and adversely using the same. It cannot be denied that Curtin and later appellee for more than 30 years kept the pipe line in repair and the intake clear —without any interference (save and except for the 41-day period when Al Smith cut the pipeline) from the appellants or their predecessors in interest.

■ The appellants in their closing brief concede that "the right to take percolating waters may be acquired by prescription", and then they narrow the issue to this: "assuming that Curtin acquired a right to the waters, did the appellees succeed to that right or did the appellants?"

The second assignment is to the effect that the court erred in its finding and conclusion of law that the waters in question were appurtenant to the west half of Section 12. The basis for appellants' contention is that these waters were not appropriable and hence could not become appurtenant to the land upon which they were beneficially used. They urge that the use of said waters might be shifted at the will of the person entitled to them, and specifically it is claimed that James Curtin did acquire a right to the use of the water and conveyed it to appellants' predecessors in interest who in turn conveyed it to them when they acquired the east half of Section 12. It would seem that this position is inconsistent with their assignment of error because in order for the court to have found that Curtin did acquire a right to the use of the water and conveyed it to T. J. Murphy (appellants' predecessor), it would have had to find that the water was appurtenant to that particular land even though the record is clear that at no time were any of said waters actually put to use upon the east half of the section. The buried pipe line is all that is on their premises. Furthermore appellants are in no better position if we assume, without deciding, that this use might be shifted at will, for the trial court in its memorandum opinion disposed of the conflicting claims in this manner:

"* * * While there is some evidence both ways, from all the surrounding circumstances I am convinced that Curtin did not convey this pipeline to Murphy, since it represented quite an investment and that Murphy and his successors in interest would not have allowed Curtin and his successors in interest to retain possession thereof had said property been sold."

Where the facts are in dispute we are bound by the findings of the lower court. There is no merit to this assignment.

Finally the appellants contend that the court erred in adjudging that appellees were entitled to the waters of Willow Spring as measured by the capacity of the existing diversion. The appellants maintain in their briefs, in effect, that because the appellees have permitted the livestock of appellants, and others, over a long period of years, to travel some 1,200 feet over onto the west half of Section 12 and there water at appellees' troughs, they have thereby established a prescriptive right to a continued use by their cattle of such quantity of water as they have consumed in the past. On the other hand the appellees, in their briefs, urge that this is wholly without the issues of the case and furthermore that allowing cattle grazing on the surrounding range

"* * * was in keeping with a custom of long standing among all cattlemen ranging cattle on the open range. The use of the water at the Gross ranch by strays and wandering cattle was permissive and reciprocal, and without any rightful or adverse claim by the owners of such cattle."

It should be noted that in cause No. 3652 (doubtless in an effort to preserve the status quo pending trial on the merits) the lower court provided in the temporary restraining order "* * * that plaintiff, however, shall allow the defendants (appellants) to water at plaintiff's tank and to enter plaintiff's corral for that purpose, to the same extent as heretofore; * * *."

After the trial court announced its decision following the trial of the consolidated cases, the appellants urged in proposed findings of fact that the court adjudicate and determine the rights, if any, of appellants to water livestock at and upon the premises of appellees. The trial court held that "* * * this matter was beyond the pleadings and issues of this case, and the application for adjudication thereof is hereby denied." An analysis of the pleadings and the evidence fully sustain this ruling, hence the trial court did not err in refusing to make such a determination and there is, therefore, no justification for us remanding the case back to the lower court for this purpose. We express no opinion upon the merits of their respective contentions as to this matter.

Judgment affirmed.

STANFORD, C. J., and PHELPS, LA PRADE and WINDES, JJ., concur.