638 P.2d 1324

TOWN OF CHINO VALLEY, a municipal corporation; and Tom M. Sullivan, William J. Wells and Edwin J. Johnson, for and on behalf of themselves and other persons and legal entities constituting a class too numerous to be named as parties, Plaintiffs-Appellants,

v.

The CITY OF PRESCOTT, a municipal corporation, Defendant-Appellee.

No. 15501.

Supreme Court of Arizona,
In Banc.

Nov. 30, 1981.

Rehearing Denied Jan. 15, 1982.

Frank J. Barry, Tucson, for plaintiffs-appellants.

Stephens & Toles by Bill Stephens, Carol Benyi, Phoenix, for defendant-appellee.

Fennemore, Craig, von Ammon & Udall by Calvin H. Udall, James W. Johnson, Phoenix, for Duval Corp.

Dept. of Water Resources of Arizona by Kathy Ferris, Chief Counsel, Scott D. Larmore, Deputy Counsel, Phoenix, for Dept. of Water Resources of Ariz.

Chandler, Tullar, Udall & Redhair by Thomas Chandler, Robert E. Lundquist, Steven Weatherspoon, Tucson, for Anamax Min. Co.

Ely, Bettini & Ulman by Herbert L. Ely, Phoenix, for Arizona State AFL–CIO.

Ryley, Carlock & Ralston by Joseph P. Ralston, Michael J. Brophy, Phoenix, for Paradise Valley Water Co.

Lewis & Roca by John P. Frank, Tom Galbraith, Phoenix, and Musick, Peeler & Garrett by Gerald G. Kelly, Los Angeles, Cal., for Cyprus Pima Associates.

Lesher, Kimble & Rucker by Robert O. Lesher, Tucson, for Arizona Ass'n of Realtors.

Ellis & Baker by William D. Baker, Robert S. Lynch, Paul R. Orme, Phoenix, for Arizona Cotton Growers Ass'n.

Evans, Kitchel & Jenckes by Burton M. Apker, Phoenix, for ASARCO, Inc.

STRUCKMEYER, Chief Justice.

This appeal is from an order of the Superior Court of Yavapai County dismissing the Town of Chino Valley's complaint to enjoin the City of Prescott from withdrawing groundwater from the Granite Creek Critical Groundwater Area. Order of the Superior Court affirmed.

The Town of Chino Valley lies approximately fifteen miles north of the City of Prescott in Yavapai County, Arizona. Prescott owns 164 acres of land in the Chino Valley. In 1948, it drilled wells on some of its Chino Valley property and began transporting groundwater through a seventeen-mile pipeline to its municipal customers. In 1962, pursuant to a petition by Chino Valley residents and A.R.S. § 45–301 et seq., the State Land Department established the Granite Creek Critical Groundwater Area. On September 20, 1970, the Town was incorporated. It was within the Granite

Creek Critical Groundwater Area and it owned lands and was withdrawing groundwater from the same underground basin as Prescott. Prescott, itself, was not within the Granite Creek Critical Groundwater Area.

This action was filed on August 21, 1972, seeking to enjoin the pumping of groundwater by Prescott. It did not seek damages for the unlawful pumping or transportation of groundwaters. The lawsuit proceeded at a desultory pace until the order of dismissal on November 3, 1980. Meanwhile, in 1977 the Legislature amended the Arizona Groundwater Code. The Town in 1978 brought an original action in this Court which challenged the constitutionality of the prohibitions against injunctive relief contained in the 1977 amendments. That challenge was rejected. *Town of Chino Valley v. State Land Department*, 119 Ariz. 243, 580 P.2d 740 (1978).

Thereafter, in June of 1980, the Legislature enacted the Groundwater Management Act, herein called the Act or the 1980 Act.*

---

* The 1980 Act provided for the establishment of Active Management Areas which are geographical areas where groundwater supplies are imperiled. A.R.S. §§ 45–411 to –637. Active Management Areas encompass a whole groundwater basin or basins. A.R.S. § 45–412(B). Groundwater basins are areas designated as enclosing a relatively hydrologically distinct body or related bodies of groundwater. A.R.S. § 45–402(10). Groundwater sub-basins are areas designated so to enclose a smaller hydrologically distinct body of groundwater found within a groundwater basin. A.R.S. § 45–402(25).

The 1980 Act provides limitations on use of groundwater in Active Management Areas. In general the Act restricts new uses of water drawn from Active Management Areas. The Act sets up a system of determining grandfathered rights to use groundwater in Active Management Areas, A.R.S. §§ 45–461 to –482, defining certain usages of groundwater previously being made and allowing these usages to continue. A.R.S. § 45–462. The Act also establishes the rights of cities, towns, private water companies and irrigation districts in Active Management Areas to withdraw as much groundwater as is needed from within their service areas to serve their customers although restrictions are provided on extensions of service areas and the types of service that may be provided by these entities. A.R.S. § 45–491. The Act also specifies a few other new uses of

groundwater that may be made in Active Management Areas. It allows limited new withdrawals for domestic purposes. A.R.S. § 45–454. It also sets up a system for obtaining permits to withdraw new amounts of water for certain specific purposes. A.R.S. §§ 45–511 to –528.

Provided withdrawal is permitted under any of the provisions of the Act, transportation of groundwater within the same sub-basin may be made without payment of damages. A.R.S. § 45–541. Transportation of groundwater between sub-basins or away from Active Management Areas is also authorized if the groundwater is allowed to be withdrawn under the Act's provisions, but damages must be paid for any injury caused. A.R.S. §§ 45–542, –543. Rules for determining damage are set out in A.R.S. § 45–545. The transportation rules apply whether in or outside of Active Management Areas, A.R.S. § 45–544, although the restrictions on new uses of groundwater do not apply outside of Active Management Areas. A.R.S. § 45–453.

The Act provides for conservation for all uses of groundwater in Active Management Areas. A.R.S. §§ 45 561 to –579. The Act ends with provisions governing the drilling and registering of wells for withdrawing groundwater, A.R.S. §§ 45 591 to –604, and financial and enforcement provisions to carry out the legislation, A.R.S. §§ 45 611 to 615, 631 to 637.

It repealed the 1977 amendments and abolished critical groundwater areas, substituting geographic units of groundwater management called Active Management Areas and Irrigation Non-Expansion Areas. Certain areas which had been declared critical groundwater areas under former laws were included in the Active Management Areas. By A.R.S. § 45–411(A)(3), the Prescott Active Management Area was established. It includes the Little Chino and Upper Agua Fria Sub-basins. Both the Town of Chino Valley and Prescott are within the Little Chino Sub-basin of the Prescott Active Management Area.

By A.R.S. § 45–541(A) of the 1980 Act, transportation of groundwater is allowed within a sub-basin of an Active Management Area. Prescott, being within the Little Chino Sub-basin from which it was drawing water, moved for dismissal of the Town's complaint for injunctive relief. The Superior Court granted Prescott's motion, but ordered that the Town have twenty days in which to file an amended complaint specifying any damages. The Town's appeal from that portion of the trial court's order dismissing appellants' claim for injunctive relief is based upon the asserted unconstitutionality of the Act of 1980 since the Act, by permitting the transportation of groundwater, legitimatizes the prospective withdrawal of groundwater from the Little Chino Sub-basin by Prescott. Appellants' principal attack is that the Act takes property without due process of law and without just compensation. The Act is also challenged on the grounds that it is a legislative encroachment on judicial powers and that it violates art. 4, part 2, § 13 of the Arizona Constitution in that there are provisions in the Act of 1980 which were not included in the title of the Act.

By the Constitution of Arizona, art. 17, § 1, effective at statehood in 1912, it was provided that the common law doctrine of riparian water rights "shall not obtain or be of any force or effect in the State." See Brasher v. Gibson, 101 Ariz. 326, 330, 419 P.2d 505, 509 (1966). Thereafter, in 1919, the Arizona Legislature provided that the water of all sources falling in streams, canyons, ravines, natural channels or definite underground channels belonged to the public and were subject to appropriation for beneficial use. Waters percolating beneath the soil were not included among those subject to appropriation. Appellants rely on the cases of *Howard v. Perrin*, 8 Ariz. 347, 76 P. 460 (1904), and *Maricopa County Water Conservation District No. 1 v. Southwest Cotton Co.*, 39 Ariz. 65, 4 P.2d 369 (1931), for their basic proposition that they own the water percolating beneath their lands under the doctrine of reasonable use.

The Territorial Supreme Court, in *Howard v. Perrin*, commented:

"Throughout the Pacific Coast, where the doctrine of appropriation obtains, the decisions are uniform to the effect that waters percolating generally through the soil beneath the surface are the property of the owner of the soil * * *." 8 Ariz. at 353, 76 P. at 462.

*Howard v. Perrin* was a case in which Howard's grantor went upon unsurveyed lands and sank a well, developing a flow of water which he conducted to some water troughs and a reservoir. About six years later, Howard posted a notice that he had appropriated water from a definite underground channel pursuant to the Laws of 1893, Act 86. The issue was whether the waters which Howard claimed to have appropriated were in a definite underground channel or, as the court said: "constituted a running stream flowing in natural channels between well-defined banks * * *." 8 Ariz. at 353, 76 P. at 462. It was held that Howard, having alleged an appropriable subterranean stream, had the burden of proof to establish that fact by competent evidence. The court said it failed "to find sufficient evidence in the testimony of the witnesses * * * to establish the existence of 'a subterranean stream with well-defined channels or banks,' * * *." *Id.* at 354, 76 P. at 463. Palpably the statement that waters percolating through the soil beneath the surface are the property of the owner of the soil is dictum.

*Maricopa County Water Conservation District No. 1 v. Southwest Cotton Co.*, 39 Ariz. 65, 4 P.2d 369 (1931), was also a case in which it was determined that the proof did not establish an underground stream so as to permit appropriation of water. The court cited to *Howard v. Perrin*, saying:

"[A]nd therein we held that waters percolating generally through the soil are the property of the owner * * *.

* * * Whether such statement was, strictly speaking, *dicta* or not, it has been accepted as the law of this jurisdiction for so long, and so many rights have been based on it, that only the clearest showing that the rule declared was error would justify us in departing from it." . *Id.* at 82–83, 4 P.2d at 375–76.

The Town of Chino Valley relies on the two foregoing cited cases, but there are others in which the statement first made in *Howard v. Perrin* was repeated, although there was at no time, according to the way we read the cases, an arguable issue as to the precise nature of the right which the owner of the overlying lands had to the waters beneath. See *Fourzan v. Curtis*, 43 Ariz. 140, 147, 29 P.2d 722, 725 (1934); *Gross v. MacCornack*, 75 Ariz. 243, 248, 255 P.2d 183, 186 (1953); *State v. Anway*, 87 Ariz. 206, 208, 349 P.2d 774, 775 (1960).

■ Dictum thrice repeated is still dictum. It is a court's statement on a question not necessarily involved in the case and, hence, is without force of adjudication. *Garvey v. Trew*, 64 Ariz. 342, 350, 170 P.2d 845, 850 (1946). It is not controlling as precedent. *Knight v. State*, 273 Ala. 480, 486, 142 So.2d 899, 905 (1962); *Sharkiewicz v. Smith*, 142 Conn. 410, 412, 114 A.2d 691, 692 (1955). We therefore hold that the statement first made in *Howard v. Perrin* and reiterated under circumstances where the exact nature of the overlying owner's rights to the water beneath his property were not in question is not precedent for the decision in this case.

In 1952, in *Bristor v. Cheatham*, 73 Ariz. 228, 240 P.2d 185, a majority of this Court held that waters percolating beneath the surface of the land were subject to appropriation. On rehearing, however, one new judge having been elected and one judge having changed his position, it was held that groundwater was not subject to appropriation. The majority said:

"[M]any and large investments have been made in the development of ground waters. Under these circumstances the court's announcement of the rule becomes a rule of property * * *." 75 Ariz. 227, 231, 255 P.2d 173, 175 (1953).

In 1970, in *Jarvis v. State Land Department*, 106 Ariz. 506, 479 P.2d 169, we said:

"The right to exhaust the common supply by transporting water for use off the lands from which they are pumped is a rule of law controlled by the doctrine of reasonable use and protected by the constitution of the state as a right in property." 106 Ariz. at 509–10, 479 P.2d at 172–73.

■ The statements in *Bristor* and *Jarvis* do not mean that rights to the use of groundwaters cannot be modified prospectively by the Legislature. They only mean that courts will adhere to an announced rule to protect rights acquired under it and that if any change in the law is necessary, it should be made by the Legislature. *Stewart v. Stewart*, 199 Cal. 318, 341, 249 P. 197–207 (1926); *Madfes v. Beverly Development Corp.*, 251 N.Y. 12, 18, 166 N.E. 787, 789 (1929). The doctrine of rule of property has no operation as against subsequent legislation. *Bryan v. W. T. Smith Lumber Co.*, 278 Ala. 538, 543, 179 So.2d 287, 292 (1965); *St. Martin Land. Co. v. Pinckney*, 212 La. 605, 618, 33 So.2d 169, 173 (1947); *Nice Ball Bearing Co. v. Mortgage Building & Loan Association*, 310 Pa. 560, 566, 166 A. 239, 241 (1933).

We therefore hold that since the Act of 1980 is prospective in application, it is not a legislative encroachment on judicial powers.

Appellants urge that the 1980 Act denies them due process of law and just compensation. The question therefore is, what are a landowner's rights in the water percolating under his lands?

■ In our recent case of *Town of Chino Valley v. State Land Dept.*, 119 Ariz. 243, 580 P.2d 704 (1978), we said:

"Under the doctrine of reasonable use property owners have the right to capture and use the underground water beneath their land for a beneficial purpose on that land * * *." *Id.* at 248, 580 P.2d at 709.

This statement we think is supported by the better reasoned decisions in this country. In the absolute sense, there can be no ownership in seeping and percolating waters until they are reduced to actual possession and control by the person claiming them because of their migratory character. Like wild animals free to roam as they please, they are the property of no one.

In *Knight v. Grimes*, 80 S.D. 517, 127 N.W.2d 708, 711 (1964), the court noted that South Dakota is largely a semi-arid state and that the legislature was fully justified in finding the public welfare required the maximum protection and utilization of its water supply. It said:

"The notion that this right to take and use percolating water constitutes an actual ownership of the water prior to withdrawal has been demonstrated to be legally fallacious. *Bassett v. Salisbury Mfg. Co.*, 1862, 43 N.H. 569, 82 Am.Dec. 179; *Katz v. Walkingshaw*, 1902, 141 Cal. 116, 70 P. 663, 64 L.R.A. 236; *Ohio Oil Company v. Indiana*, 1900, 177 U.S. 190, 20 S.Ct. 576, 44 L.Ed. 729."

In the recent case of *Village of Tequesta v. Jupiter Inlet Corp.*, 371 So.2d 663, 666–67 (Fla.), *cert. denied*, 444 U.S. 965, 100 S.Ct. 453, 62 L.Ed.2d 377 (1979), it was held:

"Ancient law gave no special consideration to ground water, treating all water like the air, the sea, and wild animals, as the property of no one or the property of everyone. Trelease, *Government Ownership and Trusteeship of Water*, 45 Calif.Law Review 638, 640 (1957).

* * * * * *

The common-law concept of absolute ownership of percolating water while it is in one's land gave him the right to abstract from his land all the water he could find there. On the other hand, it afforded him no protection against the acts of his neighbors who, by pumping on their own land, managed to draw out of his land all the water it contained. Thus the term 'ownership' as applied to percolating water never meant that the overlying owner had a property or proprietary interest in the corpus of the water itself.

* * * * * *

The right of the owner to ground water underlying his land is to the usufruct of the water and not to the water itself."

We therefore hold that there is no right of ownership of groundwater in Arizona prior to its capture and withdrawal from the common supply and that the right of the owner of the overlying land is simply to the usufruct of the water.

This brings us to conclude that appellants' position that the 1980 Act violates the Fifth and Fourteenth Amendments to the Constitution of the United States and art. 2, § 17 of the Constitution of the State of Arizona as a taking of private property without due process of law and just compensation cannot be sustained.

The Legislature, in Ch. 2 of the 1980 Act, A.R.S. § 45–401, declared:

"A. The legislature finds that the people of Arizona are dependent in whole or in part upon groundwater basins for their water supply and that in many basins and sub-basins withdrawal of groundwater is greatly in excess of the safe annual yield and that this is threatening to destroy the economy of certain areas of this state and is threatening to do substantial injury to the general economy and welfare of this state and its citizens. The legislature further finds that it is in the best interest of the general economy and welfare of this state and its citizens that the legislature evoke its police power to prescribe which uses of groundwater are most beneficial and economically effective.

B. It is therefore declared to be the public policy of this state that in the interest of protecting and stabilizing the general economy and welfare of this state

and its citizens it is necessary to conserve, protect and allocate the use of groundwater resources of the state and to provide a framework for the comprehensive management and regulation of the withdrawal, transportation, use, conservation and conveyance of rights to use the groundwater in this state."

We do not doubt but that the overdraft of groundwater in this state is a serious problem which has no chance of correcting itself, and that it is necessary for comprehensive legislation to both limit groundwater use and allocate its use among competing interests.

More than twenty-five years ago, this Court decided that the Legislature might choose between competing interests where the supply of groundwater was limited. In *Southwest Engineering Co. v. Ernst*, 79 Ariz. 403, 291 P.2d 764 (1955), we said in holding constitutional the groundwater act of 1948:

> "The legislative finding that the exhaustion of ground water by excessive withdrawals threatens to destroy one of the principal economic resources of the state to the consequential serious injury of all is not disputed. Such a conclusion is obviously justified because unrestrained use must inevitably result either in complete exhaustion of the state's ground water so that in the end the lands dependent thereon will revert to their desert state or in the lowering of water tables so that the increased cost of pumping will reduce these lands to a marginal or submarginal condition." *Id.* at 408–09, 291 P.2d at 768 (footnote omitted).

We held that there was a preponderant public interest in the preservation of lands then in cultivation as against lands potentially reclaimable "and that where as here the choice is unavoidable because a supply of water is not available for both, we cannot say that the exercise of such choice, controlled by considerations of social policy which are not unreasonable, involves a denial of due process." *Id.* at 410, 291 P.2d at 769. The Legislature in the Act of 1980 again recognized that the supply of ground-

water is limited and again exercised a choice for the preservation and use of groundwater.

Legislation which denies or restricts rights to use property necessarily results in a diminution of that property's value. Yet the United States Supreme Court has on numerous occasions upheld under the state's police power regulations of land use which have virtually destroyed private interests. Most recently, in *Agins v. City of Tiburon*, 447 U.S. 255, 100 S.Ct. 2138, 65 L.Ed.2d 106 (1980), it was held that a zoning ordinance restricting the use of a five-acre tract of land to single family residences would not effect a taking of property without compensation. The city ordinance was found to further the legitimate state interest of protecting the residents of the city from the ill effects of urbanization. *Id.* at 262, 100 S.Ct. at 2142, 65 L.Ed. at 112. In the present case, appellants may make such use of their property as they choose, except that their lands may not be irrigated if they were not legally irrigated in the last five years. The 1980 Act furthers legitimate state interests.

Legislatures of various states have from time to time abolished the prevailing uses of groundwater and substituted other plans for its use. State courts have uniformly rejected the idea that groundwater percolating through the soil may not be limited and regulated and must be acquired by eminent domain. *Village of Tequesta v. Jupiter Inlet Corp.*, 371 So.2d 663 (Fla.), *cert. denied*, 444 U.S. 965, 100 S.Ct. 453, 62 L.Ed.2d 377 (1979); *Williams v. Wichita*, 190 Kan. 317, 340–41, 374 P.2d 578, 595–96 (1962), *cert. denied*, 375 U.S. 7, 84 S.Ct. 46, 11 L.Ed.2d 38 (1963); *Crookston Cattle Co. v. Minnesota Department of Natural Resources*, 300 N.W.2d 769, 774 (Minn.1980); *Baeth v. Hoisveen*, 157 N.W.2d 728, 733 (N.D.1968); *Knight v. Grimes*, 80 S.D. 517, 523–27, 127 N.W.2d 708, 711–14 (1964).

> "Like zoning legislation, legislation which limits or regulates the right to use underlying water is permissible. * * * Where regulation operates to arbitrate between competing public and private land uses,

however, as does the water priority statute in this case, such legislation is upheld even where the value of the property declines significantly as a result." *Crookston Cattle Co. v. Minnesota Department of Natural Resources*, 300 N.W.2d at 774 (citation omitted).

We hold that the Act of 1980 does not deny appellants due process of law and does not require that they be paid compensation for any possible diminution of their rights which they may have had under the doctrine of reasonable use.

Appellants argue that the 1980 Act is unconstitutional because it contains provisions not included in its title, which is forbidden by art. 4, part 2, § 13 of the Arizona Constitution. In the Session Laws of 1980, the title of the 1980 Act consists of approximately two and one-half printed pages. We have said:

"[I]t is not necessary that the title be a synopsis or a complete index of the legislation that is to follow; that a title is invulnerable when it is sufficiently full and comprehensive as to indicate, in a general way at least, what is to follow in the way of legislation; that it should not be so meagre as to mislead or tend to avert inquiry as to the context thereof, and it is sufficient if the provisions of the Act relate directly or indirectly to the subject expressed in the title and have a natural connection therewith and not foreign thereto; and ' * * * "the title is sufficient if it is not productive of surprise and fraud, and is not calculated to mislead the legislature or the people, but is of such character as fairly to apprise legislators, and the public in general, of the subject matter of the legislation, and of the interests that are or may be affected thereby, *and to put anyone having an interest in the subject matter on inquiry*." ' " *Dennis v. Jordan*, 71 Ariz. 430, 439, 229 P.2d 692, 697–98 (1951) (emphasis in original).

The title of the 1980 Act in part provides:

"An Act relating to waters; providing for the management of groundwater; * * prescribing conditions on the withdrawal and use of groundwater in active management areas and irrigation non-expansion areas; * * * prescribing the determination of rights to withdraw and use groundwater; prescribing the use, nature of and conditions and limitations on groundwater rights; * * * prescribing rights of cities, towns, private water companies and others to withdraw and supply groundwater * * *." Groundwater Management Act, 1980 Ariz.Sess.Laws 4th Spec.Sess. 1339.

A cursory examination of the title fairly apprises the reader of the subject matter of the legislation and the interests which are or may be affected. It puts the reader on notice that the groundwater rights of all persons and entities in the State will be significantly affected by the Act and puts anyone interested in the subject matter on inquiry. More than this is not required. We hold that the 1980 Act does not contain provisions which are not reasonably related to or included in its title.

■ Many and varied interests are affected by the 1980 Act. These interests are apparent in the briefs which amici curiae have filed. We express our appreciation for their excellence and the assistance which they have given the Court. Some matters have been raised and argued which were not addressed by the parties. As to these, it is the rule that amici curiae are not permitted to create, extend, or enlarge issues beyond those raised and argued by the parties. *City of Tempe v. Prudential Insurance Company of America*, 109 Ariz. 429, 510 P.2d 745 (1973). And see the second *Bristor* opinion, 75 Ariz. 227, 230, 255 P.2d 173, 175 (1953), where the Court commented:

"It was never alleged in the complaint nor contended by the plaintiffs in assignment of error or briefs that they had appropriated percolating water. This issue was apparently introduced into the case by amici curiae who have no right to create, extend or enlarge the issues."

This Court will only decide issues raised and argued by the parties.

The order of the court below is affirmed.

HOLOHAN, V. C. J., HAYS and CAMERON, JJ., and BEN C. BIRDSALL, Judge, Court of Appeals, Division Two, concur.

Note: Justice FRANK X. GORDON, Jr. having announced his disqualification from any participation in this matter, The Honorable BEN C. BIRDSALL, Judge, Court of Appeals, Division Two was asked to sit in his stead.