**Clifton N. CHERRY, et ux., et al., Plaintiffs-Appellants,**

v.

**Wesley E. STEINER, et al., Defendants-Appellees.**

No. 82–5765.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted May 11, 1983.

Decided Sept. 22, 1983.

Daniel J. McAuliffe, Snell & Wilmer, Phoenix, Ariz., for plaintiffs-appellants.

James W. Johnson, Fennemore, Craig, von Ammon, Udall & Powers, Phoenix, Ariz., for defendants-appellees.

Before PECK,* FLETCHER and PREGERSON, Circuit Judges.

FLETCHER, Circuit Judge:

Various Arizona landowners appeal an order of the district court granting summa-

* Honorable John W. Peck, Senior United States Circuit Judge for the Sixth Circuit, sitting by designation.

ry judgment for defendants in a suit challenging the constitutionality of the Arizona Groundwater Management Act of 1980 (the Act), Ariz.Rev.Stat.Ann. §§ 45–401 to 45–637 (West Supp.1982). Plaintiffs' central contention is that prior to the enactment of the Act, they owned the groundwater beneath their property and that the Act's imposition of conditions upon the use and enjoyment of that groundwater is constitutionally infirm. We have jurisdiction under 28 U.S.C. § 1291 (1976) and affirm.

## I

Plaintiffs are several married couples, two corporations, and a private water company. All own land in the State of Arizona within the Upper Aqua Fria Subbasin of the Prescott Initial Active Management Area. They allege that there are substantial quantities of groundwater beneath their several properties and that the Act has diminished the value of the land by taking their ownership in the water without compensation. They further allege that the Act establishes arbitrary classifications which are not rationally related to the goals of the legislation, that the law contains impermissible irrebuttable presumptions, and that the legislation is void for making an impermissible reference to certain extrinsic documents not in existence at the time of enactment of the Act. They seek to enjoin State officials from enforcing the statute and quieting title in their names to the groundwater underlying their properties.

The defendants are Wesley E. Steiner, Director of the Arizona Department of Water Resources, who is charged with enforcement of the Act, and other public officials responsible for the filing of maps that designate the groundwater management areas established by the legislation. In response to the complaint, the defendants deny that the statutory scheme offends any constitutional provisions or makes any impermissible extrinsic reference. They assert that the law is the result of a valid exercise of the State's police power. They specifically deny that the plaintiffs have any ownership interest, according to Arizona law, in percolating groundwater underlying their realty.

The district court exercised jurisdiction under 28 U.S.C. § 1331 (Supp. IV 1980). Upon cross-motions for summary judgment, the district court determined that there were no issues of disputed fact and granted defendants' cross-motion for summary judgment. Plaintiffs took this timely appeal.

## II

We are indebted to the district court for its careful exposition of the Arizona statutes and case law in respect to rights in groundwater. 543 F.Supp. 1270 (D.Ariz. 1982). We find the district court's analysis persuasive and in most respects adopt the opinion of the district court as the opinion of this court. See, e.g., Pfizer, Inc. v. International Rectifier Corp., 685 F.2d 357, 358 (9th Cir.1982). We find it necessary to address only the following issues in greater detail: (a) whether the Supreme Court's dismissal of the appeal in Chino Valley v. Prescott, 457 U.S. 1101, 102 S.Ct. 2897, 73 L.Ed.2d 1310 (1982), dismissing appeal from 131 Ariz. 78, 638 P.2d 1324 (1981) (Chino Valley II), forecloses the constitutional challenges raised in this case; (b) whether the district court improperly relied on the law of states other than Arizona and other sources in determining the plaintiffs' constitutionally protected property rights; and (c) whether the Act is void for having made an improper reference to extrinsic documents. We examine these issues in turn.

### A

The defendants assert that most of the issues plaintiffs raise have been decided against them by the United States Supreme Court in Chino Valley II. In Chino Valley II, the Supreme Court summarily dismissed an appeal from the Arizona Supreme Court for "want of a substantial federal question." 457 U.S. at 1101, 102 S.Ct. at 2898. The Arizona Supreme Court affirmed the denial of an injunction to prevent the City of Prescott from withdrawing water from

under its land and transporting it elsewhere. As part of its holding it sustained the constitutionality of the Act. *See* 131 Ariz. at 82, 638 P.2d at 1328. The defendants contend that the Supreme Court's summary dismissal of the appeal from that decision constitutes a decision by the Court that the Act is in all relevant respects constitutional and that that decision is binding on this court as to each of the constitutional claims raised here. We disagree.

■ A party challenging the constitutionality of a state statute in state court may appeal an adverse holding as of right to the Supreme Court of the United States. *See* 28 U.S.C. § 1257(2) (1976). If the Supreme Court grants plenary review of the state court decision, the decision the Court makes as to the constitutionality of the statute is, of course, binding on this and every other court in the land. *See United States ex rel. Lawrence v. Woods,* 432 F.2d 1072, 1075–76 (7th Cir.1970). Even a summary disposition by the Supreme Court can have such binding effect but only if the issue was (1) actually decided in the state court, (2) necessary to the state court's decision, (3) presented in the jurisdictional statement, and (4) necessarily decided by the Court in making its summary disposition. *See, e.g., Mandel v. Bradley,* 432 U.S. 173, 176, 97 S.Ct. 2238, 2240, 53 L.Ed.2d 199 (1977); *Hicks v. Miranda,* 422 U.S. 332, 95 S.Ct. 2281, 45 L.Ed.2d 223 (1975). We agree with appellants that the district court should have determined whether any of the constitutional issues raised in this case were addressed in *Chino Valley II* and, if so, whether under *Mandel,* they were decided by the Court.

■ We conclude, however, that the district court's failure to consider the extent to which *Chino Valley II* constituted a binding precedent does not require reversal. Our independent examination persuades us that none of the constitutional issues raised in this case, whether or not they were addressed in *Chino Valley II,* meet all four *Mandel* criteria.

We first consider the procedural posture in which the relevant issues were raised in *Chino Valley II.* In *Chino Valley II,* the Town of Chino Valley and others sought to enjoin the City of Prescott from withdrawing huge quantities of water from the acquifer beneath land Prescott owned in Chino Valley and from pumping it to customers 17 miles away in Prescott. 131 Ariz. at 79, 638 P.2d at 1325. Prescott moved for dismissal on the ground that Ariz.Rev.Stat. § 45–541(A) authorized it to withdraw groundwater and transport the water to its customers. *Id.* at 680, 638 P.2d at 1326. The trial court granted the motion, but gave leave to plaintiffs to amend their complaint to pray for damages. *Id.* Chino Valley did not amend but instead appealed, asserting that the Act was unconstitutional. *Id.*

The Arizona Supreme Court affirmed the dismissal of the injunction. The court went on to state that "appellants' position that the 1980 Act violates the Fifth and Fourteenth Amendments ... as a taking of private property without due process of law and just compensation cannot be sustained." 131 Ariz. at 82, 638 P.2d at 1328. It is unclear why the Arizona court reached out for the constitutional issues since the trial court had limited its order to a denial of the injunction and specifically authorized an amendment of the complaint to pray for damages. The plaintiffs in *Chino Valley II* then appealed to the United States Supreme Court, raising in the jurisdictional statement not only the issues addressed by the Arizona Supreme Court, but also new ones.

With this background in mind, we proceed to apply the *Mandel* criteria to *Chino Valley II.* The only legal issues that were necessary to the Supreme Court's summary dismissal were the federal constitutional issues, for it is only as to those issues that the *Chino Valley* appellants had a right of appeal to the Supreme Court. *See* 28 U.S.C. § 1257(2) (1976). Moreover, the only federal constitutional issues that the Arizona Supreme Court itself purported to decide were whether the Act violated the due process clause of the fourteenth amendment and whether the Act violated the takings clause

of the fifth and fourteenth amendments. *See* 131 Ariz. at 82, 638 P.2d at 1328. Both of these issues were presented to the Supreme Court in the jurisdictional statement in *Chino Valley II.*

Although the issue of the overall constitutionality of the Act under the due process and takings clauses therefore meets three of the four *Mandel* criteria, it fails to satisfy the second, but perhaps most significant, criterion: to wit, that the issue be necessary to the state court decision. This criterion requires us to look behind what the Arizona Supreme Court said in *Chino Valley II* to determine what actually was necessary to the decision. *See Kastigar v. United States,* 406 U.S. 441, 454–55, 92 S.Ct. 1653, 1661–1662, 32 L.Ed.2d 212 (1972) ("broad language . . . unnecessary to the Court's decision . . . cannot be considered binding authority"). In considering the state court opinion, we are not free, of course, to craft a different analysis by which the state court could have resolved the case before it, but for whatever reasons chose not to use. Nonetheless, we must carefully determine exactly what the state court necessarily decided in order to dispose of the particular case before it and what, being unnecessary to the disposition at hand, was in reality mere obiter dictum.

In *Chino Valley II,* as we have explained, the plaintiff sought only injunctive relief in its complaint. The suit was not one for a declaratory judgment regarding the constitutionality of the Act. Nor did the plaintiff seek to recover damages were the requested injunction to be denied. Thus, despite the broad statements of the Arizona court in its opinion, the only question necessary to the court's disposition of the case was whether a refusal to grant prospective relief against persons withdrawing and transporting water pursuant to the Act violated due process or effected a taking. Since the district court's denial of an injunction did not preclude Chino Valley from recovering damages, affirmance of that denial required nothing more than a determination that refusing to provide injunctive relief from the Act was constitutional. Any broader

holding as to the constitutionality of section 45–541(A) of the Act (which provides, *inter alia,* that groundwater withdrawn under certain circumstances may be transported without payment of damages) under the takings and due process clauses was thus not necessary to the disposition of *Chino Valley II.*

For this reason, the Supreme Court's summary dismissal for want of a substantial federal question in *Chino Valley II* is not binding as to the issues raised in the declaratory judgment action before us. Accordingly, the district court was correct in dealing with the merits of the constitutional challenges presented in this case.

## B

The plaintiffs assert that the judgment of the district court should be reversed because the district court erroneously relied on principles of logic and the property rules of other jurisdictions to decide what federally protected rights Arizona property owners had prior to the enactment of the Groundwater Management Act of 1980. We cannot agree.

■ The due process and takings clauses of the United States Constitution protect "property" rights created by an independent body of law, usually state law. *Paul v. Davis,* 424 U.S. 693, 710–11, 96 S.Ct. 1155, 1164–1165, 47 L.Ed.2d 405 (1976); *see Parratt v. Taylor,* 451 U.S. 527, 529 n. 1, 101 S.Ct. 1908, 1910 n. 1, 68 L.Ed.2d 420 (1981). In this case, then, a crucial question is the extent of the property rights to groundwater possessed by Arizona landowners under Arizona law prior to the enactment of the Act.

■ In making this determination the district court relied primarily on the Arizona Supreme Court's exposition of Arizona groundwater rights in *Chino Valley II,* 131 Ariz. 78, 638 P.2d 1324 (1981), *appeal dismissed,* 457 U.S. 1101, 102 S.Ct. 2897, 73 L.Ed.2d 1310 (1982). *See* 543 F.Supp. at

1277.[1]  After correctly concluding that the Act did not unconstitutionally deprive landowners of their property rights described in *Chino Valley II,* the district court then proceeded to consider whether the description of property rights in the *Chino Valley II* decision was itself "a radical departure from prior law [that did] violence to [the landowners'] property rights." 543 F.Supp. at 1277.  This was a completely appropriate question to consider, for a state cannot validly effect a taking of property by the simple expedient of holding that the property right never existed.  *Hughes v. Washington,* 389 U.S. 290, 296–97, 88 S.Ct. 438, 442–443, 19 L.Ed.2d 530 (1967) (Stewart, J., concurring); *see Demorest v. City Bank Farmers Trust Co.,* 321 U.S. 36, 42–43, 64 S.Ct. 384, 388–389, 88 L.Ed. 526 (1944); *Chicago, Burlington & Quincy R.R. Co. v. Chicago,* 166 U.S. 226, 241, 17 S.Ct. 581, 586, 41 L.Ed. 979 (1897).  In deciding that the *Chino Valley II* decision marked no radical change in Arizona rules of property, the court examined Arizona cases prior to *Chino Valley II,* "the experience of other states," and principles of "logic." 543 F.Supp. at 1277–78.

■ We have examined the Arizona cases and agree with the district court that *Chino Valley II* was not a "startling" and "unpredictable" change in Arizona property law, if it represents any change at all.[2]  We do not read the district court's reference to the practice in other states and to logic to serve other than as a means of more fully understanding the rules that had been established under prior Arizona decisional law.

## C

Finally, the plaintiffs urge us to reverse the judgment below on the ground that the Act made an invalid reference to extrinsic documents thereby voiding the entire bill and that the district court improperly applied the enrolled bill doctrine to preclude an inquiry into the alleged flaw.  Although we conclude that the enrolled bill doctrine was improperly applied in this case, we agree with the district court that the Act does not suffer the defect alleged by the appellants.[3]

■ Arizona has adopted the common law rule that a statute is void if its meaning depends on a document not part of the statute, which document does not exist at the time of the enactment of the statute, unless the statute contains a proper delegation of authority to a designated agency.  *See State Compensation Fund v. de la Fuente,* 18 Ariz.App. 246, 251, 501 P.2d 422, 427–28 (1973);  *see also State ex rel. Weiks v. Tumwater,* 66 Wash.2d 33, 34–35, 36, 400 P.2d 789, 791–92 (1965).  In this case, nearly all of the provisions of the Act apply to what are designated as "active management areas."  Initial active management areas are defined in Ariz.Rev.Stat.Ann. § 45–411(A), but the definition is simply in terms of "the maps filed in the Office of the Secretary of State on the effective date of this [Act]."  Ariz.Rev.Stat.Ann. § 45–411(B) (West Supp.1982).  The Act does not delegate authority to anyone to designate the initial active management areas.  Therefore, if on the date of enactment of the Act the maps were not in existence and on file in the Office of the Secretary of

---

1. In that case, the Arizona court stated that "there is no right of ownership of groundwater in Arizona prior to its capture and withdrawal from the common supply and that the right of the owner of the overlying land is simply to the usufruct of the water."  *Chino Valley II,* 131 Ariz. at 82, 638 P.2d at 1328.

2. The question of constitutionality of the *Chino Valley II* decision was raised in the jurisdictional statement before the Supreme Court.  However, since the issue was not one of the validity of a statute under the Constitution but one of the validity of a court decision under the Con-

stitution, the question was in the court's discretionary jurisdiction.  *See* 28 U.S.C. § 1257(3) (1976).  We consider it, like the other issues raised here, as having been left unaddressed by the Court in the summary dismissal.

3. Although this issue is one of state law, it must be addressed since it could avoid the need to address the federal constitutional issues.  *See Schmidt v. Oakland Unified School District,* 457 U.S. 594, 595, 102 S.Ct. 2612, 2613, 73 L.Ed.2d 245 (1982).

State, much if not all of the Act would be void under Arizona law.[4]

While the enrolled bill rule fully applies to challenges raised against the validity of an Arizona statute, *Hernandez v. Frohmiller,* 68 Ariz. 242, 259, 204 P.2d 854, 865 (1949); *see also Field v. Clark,* 143 U.S. 649, 672–73, 680, 12 S.Ct. 495, 497–500, 36 L.Ed. 294 (1892), it has no application to plaintiffs' contention that the bill is void on its face under the rule of *de la Fuente.* The enrolled bill doctrine is intended to forestall judicial inquiry into procedural irregularities occurring prior to the enactment of bills, not inherent defects in bills as enrolled. The challenge here is based not on whether there was truly a vote of the majority in favor of the Act, or whether the Act was reported out of "X" committee as the parliamentary rules of the Arizona legislature may require, but whether the enrolled bill, itself, is void. The bill, as enrolled, refers to certain extrinsic documents. If those documents (maps on file in a particular office) did not exist on the date of enactment, the provisions of the bill dependent on those documents are void. To determine whether the duly enrolled bill is valid, the court must look at the documents from which the enrolled bill itself purports to derive its meaning.

4. That maps may *now* be on file is irrelevant to this question. The Arizona legislature intended, indeed explicitly provided, that the areas be defined by maps "in the Office of the Secretary on the effective date."

5. To the extent that plaintiffs argue that the bill was invalidly enacted because the legislature had only working copies, not final maps, before it when it voted on the bill, the challenge falls within the enrolled bill doctrine and is not within the jurisdiction of the courts to redress.

The enrolled bill doctrine, therefore, does not foreclose our inquiry; upon inquiry, however, we conclude that the bill is valid. The plaintiffs state in their briefs that the maps describing the four initial active management areas were, in fact, on file in the Secretary's office on June 12, 1980, the date on which the governor of Arizona signed the bill into law. The landowners conceded as much at oral argument. Consequently, the bill, as enrolled, was not void for an improper reference to extrinsic documents.[5]

### III

We affirm the judgment of the district court sustaining the validity of the Act.

AFFIRMED.

Based on separation of powers considerations, the doctrine precludes judicial inquiry into any procedural defects that take place before the executive has signed the bill. *See Field v. Clark,* 143 U.S. 649, 672, 12 S.Ct. 495, 497, 36 L.Ed. 294 (1892) ("respect due to coequal and independent departments requires the judicial department ... to accept ... all bills authenticated" by leaders of both houses and by the executive as having been validly enacted).