154 Ariz. 437 (1987)
743 P.2d 946
Forrest AIKINS and Mary Aikins, husband and wife, Plaintiffs/Appellants,
v.
The ARIZONA DEPARTMENT OF WATER RESOURCES, an agency of the State of Arizona; and Kathleen Ferris, Director of Water Resources, Defendants/Appellees.
No. 2 CA-CV 87-0074.
Court of Appeals of Arizona, Division 2, Department A.
June 25, 1987.
*438 Ryley, Carlock & Applewhite by A. Daniel Sheffield, Jr., Sheryl A. Sweany, Richard N. Morrison and Norman D. James, Phoenix, for plaintiffs/appellants.
Arizona Dept. of Water Resources by Elizabeth Ann Rieke, Scot C. Stirling and Scott D. Larmore, Phoenix, for defendants/appellees.
OPINION
FERNANDEZ, Judge.
This is an appeal from the superior court judgment which affirmed a decision of the Director of the Arizona Department of Water Resources (Department) that appellants may not irrigate their property under the Groundwater Management Code. We affirm.
Because of Arizona's arid condition and the dwindling supply of groundwater, the legislature passed the Groundwater Management Act of 1980 (A.R.S. §§ 45-401 through -637). In passing this legislation, the legislature found that in many water basins and sub-basins, withdrawal of groundwater is excessive, a condition which threatened substantial injury to the state. A.R.S. § 45-401(A). The Act created four active management areas (AMAs) as well as two irrigation non-expansion areas (INAs) and provided for the designation of additional or "subsequent" AMAs and INAs according to criteria specified in the Act. A.R.S. §§ 45-411, -412, -431, -432. The Act provides for strict control over the use of groundwater within the AMAs. A.R.S. § 45-451. In the INAs, the principal control is an absolute ban on increased irrigation. A.R.S. § 45-453. The section involved in this appeal is A.R.S. § 45-437(B), which sets out the requirements for irrigating in subsequent INAs.
Appellants Forrest and Mary Aikins are the owners of approximately 314 acres of land located within the Harquahala Valley Irrigation District in Maricopa County. The appellants' land is also located within the area designated as the Harquahala Irrigation Non-Expansion Area by the Director of the Department in an order dated June *439 24, 1982.[1] The area is thus a subsequent INA.
In October 1982 the Department made a preliminary finding that the appellants' land was not eligible for irrigation. After appellants requested a review of that determination, they entered into a stipulation of facts with the Department, and a short evidentiary hearing was held in October 1983. On June 26, 1985, the director adopted the findings of fact, conclusions of law and decision of the Department hearing officer and ordered that the property may not be irrigated since it does not meet the requirements of A.R.S. § 45-437(B). After denial of their motion for review or rehearing, the appellants appealed to the superior court. The court affirmed the Department's decision.
The primary issue on appeal is the interpretation of A.R.S. § 45-437(B). Appellants contend they are entitled to irrigate their land under their interpretation of the statute. They contend alternatively that they made substantial capital investments during the appropriate time period. They also claim that the Department's interpretation of § 45-437(B) is an unlawful taking of their property.
Appellants began the irrigation-related expenditures on their land in 1960 and ended them in 1968. They actually irrigated the land only from 1964 to 1968. The expenditures were for grading, leveling and clearing the land; digging and casing a well; constructing concrete irrigation ditches; connecting utilities; and purchasing an electric transformer and a submersible pump. The cost of these improvements was $122,900.
In 1964 appellants borrowed $50,000 from the Farmers Home Administration (FmHA). In 1974 they sold the land, and when the purchasers defaulted, appellants regained possession in 1978. In March 1979 appellants paid FmHA the past due payments on the loan, and FmHA reinstated their mortgage and note. As a condition of the reinstatement, FmHA required appellants to live on the property. Appellants purchased a used trailer and moved it on the property, expending a total of $2,500. They then lived on the property for two years but did not farm it.
Between 1968 and 1980 appellants attempted unsuccessfully to lease their farm. They were unable to because the farm had no cotton allotment and because the irrigation water was too alkaline. In 1964 the Harquahala Valley Irrigation District was formed in order to obtain Central Arizona Project (CAP) water for the owners of irrigable acreage. The irrigation district levied an assessment of 34 cents per acre on lands within the district each year between 1964 and 1982. Appellants paid approximately $106 per year for the assessment. In addition, appellants' land has been assessed for tax purposes as farm land rather than residential. During the period from 1976 through 1981, appellants paid $341 more in property taxes than they would have if the land had been classified as residential.
Since 1967 no expenditures have been made on the land relative to the well, pump or on-site distribution facilities. Because of the subsequent removal of most of the well equipment, approximately $55,830 would be required to refurbish it so that water could be pumped from it. Also, approximately $19,000 would have to be expended to extend an electrical power line to the well site.
INTERPRETATION OF A.R.S. § 45-437(B)
A.R.S. § 45-437(B) provides as follows:
In a subsequent irrigation non-expansion area established pursuant to § 45-432, only acres of land which were irrigated at any time during the five years preceding the date of the notice of the initiation of designation procedures may *440 be irrigated, except as provided in § 45-437.01. Land which was not irrigated at any time during this five year period is deemed to have been in irrigation if the director finds that substantial capital investment has been made for the subjugation of such land for an irrigation use including on-site irrigation distribution facilities and a well or wells the drilling and construction of which were substantially commenced before the date of the notice of the initiation of designation procedures.
The five-year period preceding the date of the notice of the initiation of designation procedures for the Harquahala INA runs from January 6, 1976 to January 6, 1981. Because appellants' land was not irrigated after 1968, it does not meet the requirement of the first sentence of the section.
According to the Department's interpretation of the statute, the Aikins' land must either have been actually irrigated or a substantial capital investment must have been made for the subjugation of the land for an irrigation use during the five-year period between 1976 and 1981. Appellants contend that the statute sets forth two separate and distinct tests: one requiring irrigation in the preceding five-year period, and the second requiring a substantial capital investment for irrigation purposes with no time limitation. We disagree.
The test for determining whether land in a subsequent INA may be irrigated is found in the first sentence of the statute, which requires that the land be irrigated during a specific five-year period. That is the only test that appears in the statute. The second sentence provides for an alternative means of satisfying the requirement of actual irrigation, but it does not alter the statutory requirement that the irrigation occur during a specific five-year period. The second sentence cannot stand by itself as a separate and distinct test because it does not provide that any acres of land may be irrigated nor does it include any other operative language to give it effect or meaning as a test for deciding whether land may be irrigated. The second sentence takes on meaning only when it is read in conjunction with the first sentence.
We find no merit to appellants' argument that their interpretation is consistent with the regulatory approach generally found in other sections of the Act governing matters such as irrigation uses and substantial capital investments for initial AMAs (A.R.S. § 45-452(A)), subsequent AMAs (§ 45-452(G)), and initial INAs (§ 45-437(A)). The mere fact that those statutes contain the same language as that found in § 45-437(B) does not mean the appellants' interpretation of that language is correct.
Appellants admit that if their interpretation of the statute is accepted, "actual irrigation of acres, at any time in the past, would qualify such acres for irrigation under the substantial capital investment provisions" of the statute. We reject that interpretation because it assumes the legislature put a five-year limitation period in the first sentence and then gutted it with a "timeless" provision in the second sentence. It further assumes the legislature did the same with other similar provisions in the Act. See A.R.S. §§ 45-437(A), -452(A), and -452(G). Second, it leads to results which are inconsistent with the obvious intent of those statutes and the fundamental purpose of the Groundwater Management Act. Appellants' interpretation would leave the door open for irrigation of every acre of land that had ever been irrigated in the past. This court should always avoid any statutory interpretation which would produce a result inconsistent with the legislature's obvious intent. City of Phoenix v. Superior Court of Maricopa County, 144 Ariz. 172, 696 P.2d 724 (App. 1985); Lake Havasu City v. Mohave County, 138 Ariz. 552, 675 P.2d 1371 (App. 1983). Statutes are not meant to be construed piecemeal but as a whole.
We hold that A.R.S. § 45-437(B) requires that, in order for a landowner to be permitted to irrigate under the Groundwater Management Code, he must be able to show either actual irrigation or a substantial capital investment for the subjugation of land for an irrigation purpose within the *441 five-year period preceding the designation of the subsequent INA.
DID APPELLANTS MAKE TIMELY SUBSTANTIAL CAPITAL INVESTMENTS?
Appellants argue alternatively that even if the Department's construction of the statute is correct, they did make the substantial capital investment required by the statute during the period 1976 to 1981. To support this contention, appellants rely on the expenditures made by them during the 1960's and upon expenditures made by the Harquahala Valley Irrigation District in its efforts to bring CAP water to the district lands.
Appellants urge us to look at the continuing nature of their investment. However, it is evident that the investments made in the 1960's were not followed by any expenditures for well deepening or repairs, pumps or on-site irrigation distribution facilities after 1967. The land has not been irrigated since 1968, and appellants sold it in 1974 to a buyer who never irrigated it. We find no evidence to support the claim that the investment was of a continuing nature.
Appellants attempt to rely on the investment of money by the irrigation district in its efforts to obtain CAP water as evidence of substantial capital investment by appellants. There is no evidence in the record of the amounts of any expenditures by the district, and the evidence supports the Department's finding that appellants' assessments of $106 per year (34 cents per acre) for the years 1976 through 1981 did not constitute the substantial capital investment contemplated by the statute.
Appellants next contend that the $18,094.62 payment they made in 1979 to FmHA in order to cure a default under the loan and their expenditure of $2,500 in order to live on the property are substantial capital investments. The 1964 loan was made in part to refinance an earlier debt which was incurred to pay for irrigation-related improvements. Thus, the 1979 payment made to bring the loan current was not a substantial capital improvement but merely a partial liquidation of the debt. It is clear that no irrigation-related investments were made in 1979. The $2,500 expenditure to purchase a trailer and move it on to the property was unrelated to irrigation purposes. It was simply a requirement of FmHA for reinstating the note.
Between 1976 and 1981 appellants' land was classified for tax purposes as agricultural land. Because of that classification the taxes imposed were $341 higher during the five-year period than they would have been had the land been classified as residential property. We find no error in the determination that property taxes do not qualify as capital investments for the subjugation of land for an irrigation use nor in the determination that $341 over a five-year period was not a substantial amount of money.
We agree that the evidence supports the finding that appellants did not make a substantial capital investment for the subjugation of their land for an irrigation use during the period 1976 through 1981.
UNLAWFUL TAKING OF PROPERTY
Appellants contend that the Department's interpretation of A.R.S. § 45-437(B) deprives them of due process and results in a taking of their property without just compensation. They contend that the statute is unconstitutional because of the alleged due process violation.
The constitutionality of the 1980 Groundwater Management Act as an exercise of the state's police power was affirmed in Town of Chino Valley v. City of Prescott, 131 Ariz. 78, 638 P.2d 1324 (1981), appeal dismissed, 457 U.S. 1101, 102 S.Ct. 2897, 73 L.Ed.2d 1310 (1982), and again in Cherry v. Steiner, 543 F. Supp. 1270 (D.Ariz. 1982), aff'd, 716 F.2d 687 (9th Cir.1983), cert. denied, 466 U.S. 931, 104 S.Ct. 1719, 80 L.Ed.2d 190 (1984).
Appellants argue that they have a "vested right" to use groundwater. However, that argument was rejected in Southwest Engineering Co. v. Ernst, 79 Ariz. 403, 291 P.2d 764 (1955). In that case, the *442 supreme court affirmed the constitutionality of the Groundwater Code of 1948 which prohibited the drilling of new irrigation wells in "critical groundwater areas." The court recognized the right of the state against individuals to regulate water consumption and rejected the plaintiff's claim that the 1948 code confiscated its rights as the owner of the groundwater under its lands. Several years later, in construing the effect of the 1953 and 1954 amendments to the 1948 code, the court had no difficulty with a provision similar to that in issue here which provided that "no land within said [restricted] area which has not been in cultivation within five years prior to the effective date of this Act shall be irrigated by ground water after the effective date of this Act." State ex rel. Morrison v. Anway, 87 Ariz. 206, 210, 349 P.2d 774, 776 (1960).
Because of previous Arizona decisions which have declared that the right to use groundwater is subject to regulation by the state acting under its police power, we find that appellants have no vested right to use the groundwater beneath their land for irrigation. We find no merit to appellants' argument that statutes and case law from Kansas and South Dakota support their claim to vested rights in Arizona.
Because appellants do not own the groundwater beneath their property, their right to use that groundwater has always been subject to modification by the legislature in the exercise of the state's police power. That exercise does not violate due process nor effect an unconstitutional taking of property. Cherry v. Steiner, supra; Town of Chino Valley v. City of Prescott, supra.
We affirm the superior court judgment which affirmed the decision and order of the Director of the Arizona Department of Water Resources.
HOWARD, P.J., and LIVERMORE, J., concur.
NOTES
[1] During that same time period, the irrigation district was in the process of determining which district lands would be eligible for Central Arizona Project water. Pursuant to federal requirements, in order to qualify for CAP irrigation water, the land must have both a history of irrigation sometime between 1958 and 1968 and be eligible for irrigation under the groundwater code.