805 P.2d 1031

**Franz ROTTER, Plaintiff–Appellant,**

**v.**

**COCONINO COUNTY; and Leland E. Thurston, Jr.; Bonnie M. Thurston; Roberta Fain; Pamela Pouquette; Red Feather Properties Limited Partnership; and Fain Properties Limited Partnership, Defendants–Appellees.**

No. 1 CA–CV 88–146.

Court of Appeals of Arizona, Division 1, Department D.

June 29, 1990.

Review Denied March 5, 1991.*

Lewis and Roca by Frank S. Bangs, Jr., John N. Iurino, Katharina Richter, and Frank J. Cassidy, Tucson, and Mangum, Wall, Stoops & Warden by Stephen K. Smith, Flagstaff, for plaintiff-appellant.

John Verkamp, Coconino County Atty. by Terence C. Hance, Chief Deputy County Atty., Flagstaff, for defendant-appellee Coconino County.

Mariscal, Weeks, McIntyre & Friedlander, P.A. by Phillip Weeks and Leonce A. Richard, Phoenix, for defendants-appellees Thurston, Fain, Pouquette, Red Feather Properties, and Fain Properties.

---

* Corcoran, J., of the Supreme Court, recused himself and did not participate in the determination of this matter.

## OPINION

GRANT, Chief Judge.

In granting declaratory relief against Franz Rotter and in favor of certain neighboring property owners and Coconino County, the trial court held that due to protests filed by several neighboring owners, A.R.S. § 11–829(C) required a unanimous favorable vote of the members of the Coconino County Board of Supervisors (the board) for approval of Rotter's request to rezone portions of two parcels he owned. On Rotter's appeal, we must determine whether the trial court correctly interpreted A.R.S. § 11–829(C).[1]

## FACTS AND PROCEDURAL HISTORY

The facts material to this appeal are not in dispute. Tusayan is an unincorporated portion of Coconino County immediately adjacent to the southern entrance to Grand Canyon National Park. Rotter owns a parcel of real property of approximately 2.12 acres in Tusayan, consisting of the eastern portions of Coconino County Assessor's Parcels No. 502–17–10D and 502–17–10B (10D and 10B). (*See* attached map). On August 27, 1986, Rotter filed a petition with the Coconino County Planning and Zoning Commission (the commission) to rezone parcels 10B and 10D from "RM–10A Residential Multiple Family" to "CH–10,-000 Commercial." Rotter was unable to obtain sufficient number of consents from surrounding property owners pursuant to

A.R.S. § 11–829(A) to require a hearing on his rezoning request, but on October 28, 1986, the commission voted to "initiate" on its own the zoning change requested by Rotter and set it for a public hearing. *See* A.R.S. § 11–829(D). The Coconino County Planning Department later informed Rotter that it would prefer that any change in the zoning of parcels 10D and 10B be from "RM–10A Residential Multiple Family" to "CG–10,000 Commercial," rather than to "CH–10,000 Commercial." Rotter modified his rezoning request accordingly, and on December 24, 1986, filed an application for a conditional use permit to enable parcels 10B and 10D to be used for an 86–unit hotel and restaurant.

At a hearing on March 31, 1987, the commission considered Rotter's petition for rezoning and application for conditional use permit. The commission denied the application for a conditional use permit and recommended that the board deny the rezoning application. On April 1, 1987, Rotter appealed to the board from the denial of his application for a conditional use permit. The board held a hearing on May 4, 1987, to consider Rotter's rezoning application and his appeal from the permit denial.

At the time of the commission's hearing and the later hearing before the board, there were eleven parcels of private real property of which all or some portion were within 300 feet of parcels 10B and 10D. These parcels were as follows:

| Parcel | Area | Owner | Zone |
|--------|------|-------|------|
| 7B | 1.377 | Red Feather Properties | CG–10,000 |
| 7F | 4.609 | Red Feather Properties | CG–10,000 |
| 9A | .996 | Red Feather Properties | CG–10,000 |
| 9B | .344 | Red Feather Properties | CG–10,000 |
| 12C | 3.030 | Cinema Group, Inc. | CG–10,000 (1.928 ac) P (1.102 ac) |
| 10B (remain.) | .620 | Elling Halvorsen, John Seibold | RM–20/A |

1. Since 1980, Rotter has operated a 77–unit hotel on parcel 502–17–11G (11G). As a result of a zoning change in 1981, Rotter's hotel became a nonconforming use. Parcel 11G abuts the south side of parcel 10B. In a related case, *Rotter v. Coconino County*, Rotter applied to the Coconino County Planning and Zoning Commission for authorization to expand his nonconforming business use by one hundred percent of its area onto parcels 10B and 10D. On appeal, this court held that A.R.S. § 11–830(B) authorizes the expansion of a nonconforming business use onto an adjoining parcel up to one hundred percent of the area of the original business without restriction by the county. 167 Ariz. 198, 805 P.2d 1019 (App.).

| Parcel | Area | Owner | Zone |
|--------|------|-------|------|
| 10D (remain.) | .474 | Elling Halvorsen, John Seibold | RM–20/A |
| 10C | 1.500 | Elling Halvorsen, John Seibold | RM–20/A |
| 11G | 1.406 | American Legion, John Ivens Post 42 | RM–10/A |
| 11H | .115 | Franz and Hannah Rotter | RM–10/A |
| 20G | 35.885 | Leland and Bonnie Thurston | RM–10/A (1.83 ac) RS–10,000 (approx. 5 ac.) G (approx. 29 ac.) |

On April 28, 1987, before the board hearing, appellees Red Feather Properties Limited Partnership and Leland and Bonnie Thurston, owners of parcels 9A, 9B, 7B, 7F and 20G, filed with the board a written protest to Rotter's petition for rezoning. The written protest, prepared by counsel for a company that managed these five parcels for the Thurstons and Red Feather Properties Limited Partnership, asserted that the protest "was signed by 20% of the owners of property by area and number within the zoning area," and requested "that the proposed zone change *not* be made except by unanimous vote of all members of the Board of Supervisors at the upcoming hearing." At the hearing on Rotter's petition for rezoning and appeal from the commission's denial of a conditional use permit, the board voted 3–2 to grant the requested rezoning and conditional use permit. The Coconino County Attorney's opinion, however, was that a unanimous vote was required to approve the requested rezoning because of the protests filed by the Thurstons and Red Feather Properties Limited Partnership, and the requested rezoning and conditional use permit were therefore deemed denied.

On June 1, 1987, Rotter brought the instant declaratory judgment action against Coconino County. Counts I and II of his complaint sought a declaration that the majority vote of the board on May 4, 1987, was legally effective to approve the rezoning and conditional use permit. On June 29, 1987, the county filed a motion to join as defendants the property owners who had protested Rotter's petition for rezoning. The trial court granted the motion.

Rotter later filed a motion for summary judgment on Counts I and II of the complaint. Appellees opposed the motion and filed a cross-motion for summary judgment. After oral argument, the trial court issued a minute entry denying Rotter's motion for summary judgment and granting appellees' cross-motion for summary judgment. On January 20, 1988, the trial court entered a "Partial Final Judgment" pursuant to Rule 54(b), Arizona Rules of Civil Procedure. This timely appeal followed.[2]

## THE ISSUE

To determine whether the trial court correctly ruled for appellees, we must interpret A.R.S. § 11–829. As of May 4, 1987, when the Coconino County Board of Supervisors took the action that is the subject of this litigation, A.R.S. § 11–829 provided in pertinent part:

A. A person desiring an amendment or change in the zoning ordinance changing the zoning district boundaries within an area previously zoned, shall file a petition in favor of the change and shall also file the written consents of at least fifty-one per cent of the owners by num-

---

**2.** Because Counts III and VIII of Rotter's complaint sought the same relief demanded by Counts I and II based on alternative legal theories, this court initially questioned the finality of the "Partial Final Judgment." *See Marshall v. Williams,* 128 Ariz. 511, 627 P.2d 242 (App. 1981). By stipulation of the parties, the trial court later dismissed Counts III and VIII of Rotter's complaint with prejudice. By order of June 14, 1988, Department C of this court found that the stipulation and order for dismissal had mooted the potential jurisdictional defect, and ordered that the appeal proceed.

ber and area of all other properties any part of which is within three hundred feet of the proposed change. If the petition is for a change of classification, there shall not be counted, either in numbers or area, the owners of land of the same classification as sought by the petitioners.

B. Upon receipt of the petition the board shall submit it to the commission for a report. Prior to reporting to the board, the commission shall hold at least one public hearing thereon after giving at least fifteen days notice thereof by one publication in a newspaper of general circulation in the county seat and by posting of the area included in the proposed change.

C. Upon receipt of the commission's recommendation the board shall hold a public hearing thereon at least fifteen days notice of which shall be given by one publication in a newspaper of general circulation in the county seat and by posting the area included in the proposed change. After holding the hearing the board may adopt the amendment, but *if twenty per cent of the owners of property by area and number within the zoning area file a protest to the proposed change, the change shall not be made except by the unanimous vote of all members of the board.*

D. The planning commission may on its own motion propose an amendment to the zoning ordinance and may, after holding a public hearing as required by this chapter, transmit the proposal to the board which shall thereupon proceed as set forth in this chapter for any other amendment.

(Emphasis added.)

The key to resolving this appeal is the meaning of the phrase "within the zoning area" in A.R.S. § 11–829(C). If it refers to the area that would be directly affected by the proposed amendment or change, in this case parcels 10B and 10D, then insufficient protests were received and the board of supervisors' 3–2 vote was enough to approve Rotter's petition for rezoning and application for a conditional use permit. However, if "within the zoning area" is construed to refer to the area described by A.R.S. § 11–829(A) from which a person desiring an amendment or change in the zoning ordinance must secure written consents, then sufficient protests were received to require a unanimous vote under subsection (C), if the "area" computation includes the entire area of any parcel of which any part falls within 300 feet of the proposed change and the "number" computation is made with reference to numbers of surrounding owners rather than numbers of surrounding parcels. On the other hand, again assuming the phrase "within the zoning area" refers to the consent area described by subsection (A), unanimity was *not* required if the "area" computation includes only those portions of surrounding parcels actually within 300 feet of the proposed change. Unanimity was also not required if the "number" computation is based on the number of surrounding parcels, rather than the number of surrounding owners, and excludes any parcels within the same zoning classification as that sought by the petition for rezoning.

## LEGISLATIVE BACKGROUND OF A.R.S. § 11–829

When The County Planning and Zoning Act of 1949 was first adopted in Laws 1949, ch. 58, "zoning area" was specifically defined to mean "any portion of any county in which the local option plan of zoning has been adopted as provided in section 11 herein, within which the county zoning ordinance is sought to be applied, or has been applied in conformity with the provisions of section 12 herein." Laws 1949, ch. 58, § 2. Section 11 of the Act provided a means by which county voters could, by referendum petition, require an election to determine whether "local option" zoning by "zoning area" should be permitted within the county. Section 12 established the procedures for local option zoning if approved after an election as provided in Section 11. Section 13 required the board to adopt a county zoning ordinance incorporating the zoning regulations previously adopted by the board together with the zoning map recommended by the county planning and zoning

commission and approved by the voters. Section 14 limited "zoning areas" to no less than 160 acres and no more than 1,280 acres, with certain exceptions. Section 15 was substantially similar to A.R.S. § 11–829, quoted *supra* at 6–7.

Section 2 of Laws 1949, ch. 58, which defined "zoning area," was initially codified as § 17–1902 of the 1939 Arizona Code Annotated, and later as A.R.S. § 11–801. Sections 11 through 15 were codified at the same time as A.C.A. §§ 17–1911 through 17–1915, and later as A.R.S. §§ 11–825 through 11–829. In Laws 1949, ch. 58, §§ 11 through 15 were entitled, respectively: "Alternate methods for initiating zoning"; "Establishment of zoning areas by local option"; "Adoption or extension of ordinance for zoning areas"; "Limitation on zoning area"; and "Amendment within zoning area." Sections 11 through 15 retained these titles when first codified as A.C.A. §§ 17–1911 through 17–1915. The titles of the first four sections also remained esentially the same when they were recodified in 1956 as A.R.S. § 11–825 through 11–828. At some point in the recodification process, however, the title of § 11–829 was changed from "Amendment within zoning area" to "Amendment of ordinance or change of zoning district boundaries." *See* Laws 1956, ch. 111, § 4.[3]

Much later, Laws 1971, ch. 129, § 1 deleted the definition of "zoning area."[4] Although the 1971 enactment repealed the definition of the term "zoning area" used throughout A.R.S. §§ 11–825, 11–826, 11–827, and 11–828, and a 1974 enactment repealed A.R.S. §§ 11–825 through 11–828 and changed the heading of Title 11, ch. 6, art. 2 from "County Plan and Local Option Zoning" to "County Plan and Zoning,"

Laws 1974, ch. 107, §§ 1, 2, A.R.S. § 11–829 remained in effect and unchanged.

## INTERPRETATION

The long evolution of A.R.S. § 11–829 that preceded the board's vote in this case presents us with a difficult statutory construction problem. In the original County Planning and Zoning Act of 1949, the term "zoning area" was used throughout §§ 11 through 15, the predecessors of A.R.S. §§ 11–825 through 11–829, and was specifically defined as any portion of a county for which "local option" zoning had been adopted by referendum election. Laws 1949, ch. 58, § 2. Accordingly, it is quite clear that the legislature's original intent in adopting Laws 1949, ch. 58, § 15, including that part of it which later became A.R.S. § 11–829(C), was only to provide procedures for amending a zoning ordinance previously adopted in a "zoning area" as the Act defined it. It follows that, as originally enacted, § 11–829(C) required a unanimous vote of the members of the board to amend or change a zoning ordinance only if twenty percent of the owners of property by area and number in the affected local option "zoning area" filed protests, an area which under § 14 of the Act had to consist of at least 160 acres. In the 1949 Act, this "zoning area" obviously bore no relationship to the 300–foot consent area described in § 11–829(A).

The task that remains is to determine how, if at all, the legislature intended to affect A.R.S. § 11–829 when it deleted the definition of "zoning area" from A.R.S. § 11–801 in 1971 and repealed former A.R.S. §§ 11–825 through 11–828 in 1974.[5]

---

**3.** Unlike the Session Laws of more recent years, Laws 1956, ch. 111, § 4 did not clearly indicate what specific change was being effected by the amendment. Since the entire text of § 11–829 was exactly the same both before and after the 1956 amendment, we infer that the amendment changed only the statute's title. *See* Historical Note to A.R.S. § 11–829.

**4.** Laws 1971, ch. 129 was apparently enacted for the principal purpose of requiring every county planning and zoning commission to prepare and recommend to its board of supervisors a

comprehensive plan for its county and to require the board of supervisors to adopt a comprehensive plan in whole or in part. *See* Laws 1971, ch. 129, § 6, adding A.R.S. § 11–806(B), (C), (D), and (E).

**5.** Concerning Arizona Code Annotated § 17–1915, an intermediate predecessor of A.R.S. § 11–829, our supreme court stated in dictum in 1957:

Section 17–1915, *supra*, expressly provides that the Commission may at any time on its

Those actions left intact the language of A.R.S. § 11–829 substantially as adopted in 1949, but entirely removed the specific definition and associated statutory context that gave the term "zoning area" its original limited meaning.

■ To discover the post–1974 meaning of the term "zoning area" in A.R.S. § 11–829(C), we must follow principles of statutory construction. In determining the legislature's intent, an appellate court will take into consideration the meaning naturally attaching to the words used and will adopt that meaning which best harmonizes with the context. *Phoenix Title & Trust Co. v. Burns,* 96 Ariz. 332, 335, 395 P.2d 532, 533 (1964). A statutory provision must be read and construed in context with related provisions and in light of its place in the statutory scheme. *Grant v. Board of Regents,* 133 Ariz. 527, 529, 652 P.2d 1374, 1376 (1982); *see Golder v. Department of Revenue,* 123 Ariz. 260, 265, 599 P.2d 216, 221 (1979); *Martin v. Martin,* 156 Ariz. 452, 457, 752 P.2d 1038, 1043 (1988); *Stuart v. Ins. Co. of North America,* 152 Ariz. 78, 80, 730 P.2d 255, 257 (App.1986).

■ We agree with the parties that in view of the language and context of A.R.S. § 11–829 at the time of the board's vote in this case, "zoning area" within subsection (C) must be interpreted either to refer to the particular parcel or parcels that will be directly affected by the proposed change or amendment to the zoning ordinance, or,

alternatively, to the area defined in subsection (A) from which the proponent of a change or amendment must secure written consents in order to compel a hearing pursuant to subsection (B). Given the statutory scheme as it has existed since 1974, there are simply no other possibilities.

We have found no applicable case law and no legislative history suggesting the legislature's intended meaning of A.R.S. § 11–829(C). Considering the term in context of related provisions, we hold that "zoning area" in subsection (C) incorporates the 300–foot consent perimeter described in subsection (A). Therefore the phrase "zoning area" in subsection (C) acquires definitional context from subsection (A).

The question of what portion of the area of a surrounding parcel is to be counted in the "area" computation under subsection (A) (as incorporated into subsection (C)) can also be resolved from the statutory language. Subsection (A) clearly refers to "owners by number and area of all other properties any part of which is within three hundred feet of the proposed change." If one accepts the view that subsection (A) is to be incorporated into subsection (C), the entire area of any parcel which is wholly or partly within the 300–foot perimeter should be included in the twenty percent protest count under subsection (C).

One seeking a change under this statutory scheme must obtain the written consent of a group of potentially affected property owners described by reference to

own motion propose an amendment to a zoning ordinance changing zoning district boundaries within an area previously zoned. After noticing and hearing the matter the Commission is authorized to transmit its recommendations to the Board, and such of itself gives the Board power to effect a change notwithstanding a want of consent of any or all of the property owners within the affected area. Of course, if twenty per cent (20%) of such property owners file a formal protest in opposition, no change can be adopted without unanimous approval of the Board. It is, therefore, clear that under § 17–1915, supra, the power to act of either the Commission or the Board is nowise dependent upon the consent of any of the affected property owners.

*Hart v. Arganese,* 82 Ariz. 380, 384, 313 P.2d 756, 759 (1957). *Hart* was decided well before the

definition of "zoning area" was repealed in 1971 and the local option zoning sections were repealed in 1974. We therefore conclude that the *Hart* court's apparent equating of the "zoning area" referred to in the sixth sentence of A.C.A. § 17–1915 (A.R.S. § 11–829(C)) and the consent area defined by the first sentence of A.C.A. § 17–1915 (A.R.S. § 11–829(A)) was simply an error. We agree with appellees' statement that *Hart*'s language

is nothing more than a gratuitous comment by the Court which has nothing to do with the issues being addressed in the Court's opinion. It is therefore pure *dictum* without force of adjudication and is not controlling as precedent. *Town of Chino Valley v. City of Prescott,* 131 Ariz. 78, 81, 638 P.2d 1324, 1327 (1981).

"included properties". "Included properties" for subsection (A) purposes are those not already holding the classification sought, *any part* of which lies within 300 feet of the proposed change. The total area of these properties is designated as "included acreage" and the owners of these properties are designated "included owners". *All* property owners whose properties fall either wholly or partially within 300 feet of the property to be rezoned have the right to protest the rezoning. If twenty percent of such individual property owners protest the rezoning and their combined properties represent twenty percent of the total area of all properties any part of which is within 300 feet of the proposed change, then a unanimous vote by the board is required to approve the rezoning.

The consent vote established by subsection (A) must satisfy both a geographic and a popular requirement. To initiate a reclassification, the proponent must meet: (1.) the geographic requirement of written consent by owners of at least 51% of included acreage and (2.) the popular requirement of written consent by at least 51% of the included owners. This consent vote only gets reclassification before the commission. The statute contemplates that a substantial opposition can force the proponent to face the hurdle of a unanimous vote by the board. To do so, the opponents must both comprise 20% of the included owners as defined above and represent at least 20% of the included acreage.

We base our decision on the proposition that statutory provisions giving surrounding land owners the opportunity to protest zoning changes generally protect the interest in stability and continuity in zoning regulation. As stated in Anderson:

> Traditionally, zoning restrictions have been prospective rather than retroactive. They undertake to provide space for the projected needs of the municipality and to protect existing and future users of land from the hazards of incompatible use. The notion of stability is implicit in the pattern of regulation. As change is at least the superficial converse of stability, there is a built-in resistance to amendment or repeal. The desire for

stable regulation has of course competed with the need for change.

1 R. Anderson, *American Law of Zoning 3d* § 4.26, at 286 (3d ed. 1986) (footnote omitted). Anderson also states:

> The interest of property owners in the stability and continuity of zoning regulations is protected in most jurisdictions by affording them not only an opportunity to appear at public hearings, but also to protest specific changes in a formal manner. The enabling acts generally provided for the filing of protest petitions by a specified number of property owners within a prescribed distance of the land affected by the amendment under consideration.

*Id.* § 4.34, at 312 (footnotes omitted); *See also Levin v. Township of Parsippany–Troy Hills*, 82 N.J. 174, 180, 411 A.2d 704, 707 (1980) (quoting Anderson).

■ As to the question of whether subsection (A) (as incorporated into subsection (C)) should count numbers of parcels or numbers of owners, we believe that the language of both subsections makes clear that it is owners and not parcels that are counted. Appellant's argument to the contrary based on the "doctrine of the last antecedent" is not convincing. In *Town of South Tucson v. Board of Supervisors*, 52 Ariz. 575, 584, 84 P.2d 581, 585 (1938), our supreme court said that the clear intent of the legislature takes precedence over all grammatical rules of statutory construction, particularly the doctrine of the last antecedent. Although legislative intent here is not altogether clear we regard our construction as the most sensible construction of admittedly difficult language.

Red Feather and the Thurstons constituted a protest by 33 percent of the owners of property by number within the "zoning area" to the requested zoning change. Even if the protest filed by Red Feather were excluded from consideration for the reason that property owners whose property is within the same zoning classification as that sought by the rezoning are not allowed to file protests under A.R.S. § 11–829(C), the protest filed by the Thur-

stons was, by itself, sufficient to require a unanimous vote by the board. Therefore the board properly required unanimous approval of appellant's petition for rezoning.

For the foregoing reasons, we affirm the trial court's grant of summary judgment to the appellees.

CONTRERAS and FIDEL, JJ., concur.

APPENDIX

L

COCONINO COUNTY

| SCALE | | LAST RE |
|---|---|---|
| 1" = 300' | | 18mm |
| TAX CODE | PARCELS | MARKET/ |

FOREST

LOT 9

LOT 8

STATE

HIGHWAY